HOME MUTUAL BUILDING AND LOAN ASSOCIATION *v.* RICHARD LEONARD ET AL.

1. UNLAWFUL DETAINER.    *Equitable defenses.*

   Purely equitable defenses are not maintainable in an action of unlawful detainer.

2. SAME.    *Quo warranto.*

   That a corporation has so conducted its affairs as to subject it to a *quo warranto* by the state, does not prevent its recovery in an action of unlawful detainer against a private person.

FROM the circuit court of Madison county.

HON. ROBERT POWELL, Judge.

The appellant, the Home Mutual Building and Loan Association, was the plaintiff in the court below; Leonard and his wife, appellees, were defendants there. Leonard obtained a loan from appellant, giving a deed of trust on the premises in controversy to secure the same. Afterwards he obtained two other loans and executed deeds of trust on same lands to secure them. After paying dues for some time, he ceased making payments, and the property was finally sold under the last two deeds of trust and was bought by appellant. Leonard and wife refused to deliver possession, whereupon appellant brought this action of unlawful entry and detainer, and recovered judgment, from which Leonard and wife appealed to the circuit court, where, under a peremptory instruction, verdict and judgment were rendered for them, and the suit was dismissed. The plaintiff appealed to the supreme court.

*J. A. P. Campbell,* for appellant.

It is indisputable that Leonard borrowed money three different times from the association and purchased a home with the first loan, and gave three deeds of trust on it, and made default, not only as a member in payment of dues and fines, but as to the money borrowed, and that the condition of the three deeds of trust was broken, and that the land conveyed was duly sold by the trustee under the second deed of trust and was conveyed to the association, and upon this unquestioned presentation the plaintiff was entitled to a peremptory instruction, but instead the defendant got it.

There is no plausible pretense that the deeds of trust given by Leonard were void. They were undoubtedly valid. There was no usury, and if there was, it would not render invalid the transaction, but would simply avoid the excess over legal interest. In truth, all talk about usury in this case is out of place, because the act of 1886, p. 35, and the code, § 2348, expressly exempt building and loan associations from the law as to usury. There was no illegality in the transaction with

Leonard of which he can avail, in this action, certainly. If there was any irregularity in the conduct of the association, or any unauthorized action, any improper by-law, or departure from the true objects of the association, that does not furnish any ground of defense by Leonard against recovery by it of the land its money paid for and Leonard's deeds of trust conveyed as security for the money loaned him, a member of the association. One of the canons of corporation law is that corporate existence, or right to be, cannot be questioned collaterally, and this applies to building and loan associations as well as other corporations. Endlich on Building & Loan Associations, sec. 309; *Ib.,* sec. 504; 4 Am. & Eng. Enc. L., (2d ed.), title, Building and Loan Associations.

Even if some ground existed for making the sale voidable, that would not avail here. Endlich on B. & L. Associations, secs. 309, 313, 380, 507, 508; Jones on Mortgages, 1876; 64 Ala., 501; 54 Ala.; 309; 76 Ala., 509.

Nothing but the absolute nullity of the deeds of trust, or their extinction by payment, or disregard of their conditions by the trustee in selling could avail as a defense to a recovery by the plaintiff in this action. Jones on Mortgages, sec. 1876, and cases above cited.

The point as to the validity of the sale because the trustee, Powell, also attorney of the association, asked some friend to buy the property for the association, is as trivial and unavailing to Leonard as the others. The association had the right to buy, and might have left a bid with the auctioneer, and, if it was the highest bid, and the sale was fair, there could be no valid objection to it. *Dunlon* v. *Sharpe,* 70 Miss., 850; 18 How. (U. S.), 143; 115 U. S. 308; Jones on Mortgages, secs. 1880, 1882.

*Alexander & Alexander* and *W. H. Powell,* on the same side.

This is purely a possessory action, in which the fewest number of defenses are permissible. If there was a trust deed,

not void, securing a debt, any part of which was unpaid, and a valid exercise of the power of sale, the plaintiff was entitled to recover, and the court should have so instructed. So narrow is the issue in this form of action that the judgment is not a bar to any other action, nor conclusive of the facts found. Code 1892, § 4475.

The loan was not void. Leonard confessedly got in money from the association three loans, aggregating $1,875, and if we deduct from the first the premium and from the other two the amounts reserved to pay what was then in arrears, we still have $1,188.19 as the net cash gotten by Leonard. Now, if we charge him with the $1,040 and with the $240 and the $220, the several sums received by him in money and credit, and credit him with the interest and fines actually paid or reserved out of the last two loans, we find that there was a balance of $847.78 in July, 1895. That is to say, conceding that the loan was usurious and ignoring the statute permitting building and loan associations to charge usury, and treating all payments of interest and fines as reducing the principal, we have as the balance due, $847.78. Again, if we, in opposition to all the authorities on the subject, concede that this is to be credited with the dues or stock payments, $610, we still have a balance of $237.78, a sum greater than the property brought when sold. If the sale was valid under either of the deeds, the association acquired the legal title to the land and the right to possession.

There is no objection urged to the notice of sale or any step in it, except that the trustee asked another, a disinterested person, to announce the opening bid which the association wished to make. That there is no legal objection to this is above dispute. *Dunlon* v. *Sharpe,* 70 Miss., 850; Am. & Eng. Enc. L., title, Trust Deed.

We cite the court to the following authorities as maintaining appellant's right, viz.: Angell & Ames on Corporations, sec. 362; 2 Parsons on Contracts, 790; *Hagerman* v. *B. & L. Associa-*

*tion,* 25 Ohio St., 186; *Poock* v. *Lafayette Association,* 71 Ind., 357; *Kelly* v. *Mobile Association,* 64 Ala., 501; *Massey* v. *Citizens' B. & L. Association,* 22 Kan., 624; *Morrison* v. *Dorsey,* 48 Md., 461; *Kadish* v. *Gordon City,* 151 Ill., 531; 2 Jones on Mortgages, sec. 1808; 26 Am. & Eng. Enc. L., 909; *Parks* v. *Fulton,* 46 Ga., 166; *Hobakin* v. *Martin,* 13 N. J. Eq., 43; 4 Am. & Eng. Enc. L., 1034; *Stiles' Appeal,* 95 Pa.; *McAuley* v. *Association,* 97 Tenn., 421; *Building & Loan Association* v. *Shields,* 71 Miss., 630.

*Mayes & Harris* and *J. B. Chrisman,* for appellees.

The sale of appellees' property is voidable by them, or even void, for two distinct reasons, or rather two distinct sets of reasons. First, because the debt and sale were, in themselves, (a) usurious; (b) otherwise illegal and oppressive, and (c) fraudulent. Second, because the sale was made, and the property bid in, by Mr. Powell, who sustained inconsistent relations.

Before going into these questions, however, there is a preliminary question: Can these defenses be made in this action? We maintain that they can. In *Williams* v. *Simpson,* 70 Miss., 113, this court held that unlawful detainer may be defended by showing that the debt for which the trust deed was given was void. This defense also can be made, notwithstanding the fact that the defendant might have prevented the sale by injunction. In *Lobdell* v. *Mason,* 71 Miss., 943, this court further decided that the action of unlawful detainer could be successfully defended by appealing to a good equity. See *Hamill* v. *Bank,* 22 Colorado, 384.

This transaction was clearly usurious, and for several reasons. Leonard obtained in cash from the association the net sum of $1,531.60. Yet, on April 10, 1897, after he had paid in cash $1,257.22, the association claimed that he still owed $1,930.80.

Now, in the Sullivan case, 70 Miss., 94, this court has ruled

that the subtraction of premium alone does not make the transaction usurious. But this court has not held in that case or any other that the old rule that usury will be hunted out and punished, however disguised, will be disregarded, even in the case of building and loan associations.

It is true, as this court decided in the Sullivan case, that interest cannot be charged on the premium. Why? Simply because, as to the premium, the borrower is not debtor to the association. He has simply released so much of a future contingent liability of the association to him. This double relation between the association, on the one hand, and its members, on the other, is of the very essence of a building and loan association. They cannot absolve themselves from it or repudiate it. The member is a stockholder; he may be a borrower; his rights in the one case are entirely distinct from his liabilities in the other.

The appellant is trying to hold the appellee, in his capacity of borrower, as debtor for the bonus which, in his capacity of stockholder, he agreed to allow to the association on liquidation day. The officers are demanding of Leonard in cash the full face of the notes, not on liquidation day, as per his rights, but in advance of that day.

It may be said that such demand is authorized by the agreement of loan and the charter. That is true; it is in the note exacted and it is in the charter. But it is none the less usurious because thereof. The charter is one taken out under the general statute, and not granted by the legislature. No illegal provision in such charter which ought to have caused its rejection by the attorney-general and the governor, is made legal and operative by their failure to detect and condemn it. The general laws cannot be set aside by the incorporation of companies through the governor's office. This demand makes the contract usurious, because it is a demand largely in excess of the legal rate of interest, made in the name of premium, but manifestly an evasion of the law in respect to premiums, and

only a cover for an illegal extortion of money from an unfortunate borrower.

The second element of usury in this contract is this: That the full legal rate of conventional interest was exacted to be paid on the money borrowed, and required to be paid, and was taken, in fact, in advance. *Hyde* v. *Finley,* 26 Miss., 468; *Polkinghorne* v. *Hendricks,* 61 Miss., 366; *Hiller* v. *Ellis,* 72 Miss., 701.

The third element of usury in this contract in this: The association exacted and demanded and received, not only fines, but also fines on fines. This was unlawful and usurious. There fines are 10 per centum per month, compounded. 4 Am. & Eng. gave a $3,000 legacy to G. Malin Davis, in payment of a debt· "Fines") ; *Loan Assn.* v. *McElroy,* 72 Miss., 434.

The association cannot claim the exemption from the usury laws extended to building and loan associations by § 2348, code 1892, for two distinct reasons: First, that section does not extend the immunity to all building and loan associations, but only to those which deal only with their own members. This company dealt with outsiders. Secondly, even if the company had dealt only with its own members, and had qualified itself under the code, it could not claim such immunity as to this transaction. The loan and contract were made in 1891. *Goodman* v. *Durant Building, etc.,* 71 Miss., 310.

The smaller transactions of 1894 and 1895 took place, it is true, after the code went into operation; but they were so intimately related to the transaction of 1891, and in such direct furtherance of it, as to be tainted with its usury. But even if not, they are a small matter and uninfluential in this case.                    ·

Leonard was declared in default, and the sales were made under the second mortgage and under the void third mortgage. These mortgages were in the common form of deeds of trust, with power of sale.

It is the duty of the trustee to look to the interest of the

trust debtor as well as to those of the creditor. In deeds of trust, especially in those of long standing, where the amount due and to be raised by a sale is uncertain, where there are various deeds of trust or other incumbrances, where the legal title is outstanding, where there is a cloud upon the title, or, in conclusion, any impediment to a fair execution of the trust, the trustee, who is the agent of both parties, is bound to act impartially between them, and ought of his own motion to apply to a court of equity, etc. *Hartman* v. *Evans,* 38 W. Va., 669, 679; *Sherwood* v. *Saxton,* 63 Me., 78; *Equitable Trust Co.* v. *Fisher,* 106 Ill., 189. And this court has said that the utmost good faith, fairness, and impartiality must characterize the execution of a power of sale in a deed· of trust, or else the grantor may, by timely complaint, have it set aside. *Dunton* v. *Sharpe,* 70 Miss., 850.

The sale was made by Mr. Powell, who was not only trustee, and therefore bound to represent each party impartially, but also attorney for the association, and bound to look after its interests exclusively; and also a stockholder, and therefore personally interested, and also kinsman of other stockholders, and therefore interested through his natural affections. The whole situation was contrary to public policy. *Spinks* v. *Davis,* 32 Miss., 152; *Whalley* v. *Hughes,* 53 Miss., 268; *Wildberger* v. *Insurance Co.,* 72 Miss., 338.

Argued orally by *C. H. Alexander,* for appellant, and *Edward Mayes,* for appellees.

· WHITFIELD, J., delivered the opinion of the court.

This record presents a case with some features of extraordinary hardship; and we are not to be understood as saying that the appellees may not be entitled to relief in the proper forum.· But the defenses which would be available, if any, are equitable and cannot be interposed in this action. Endlich Building & Loan Associations, secs. 309, 313, 510, 512. And

to that forum appellees may still resort, if they desire. It is not allowable for them, further, to present as a defense here, matter which would sustain a proceeding by *quo warranto* on the part of the state. *Ib.,* secs. 481, 507. "No private person," says the author, "can ask for its dissolution, on such grounds, nor insist upon the consequence with which the state might visit corporate misbehavior, for the purpose of escaping his contract obligations with the association."

The Colorado case—*Hamill* v. *Bank,* 22 Colo., 384—went off upon the effect of an agreement between the parties that the time of maturity of the debt secured by the trust deed had been postponed to a period beyond the date of the sale and purchase under the instrument, in the light of the wording of their statute. The defense "substantially was," under the wording of the statute, "that the property had not been duly sold, nor the title in the plaintiff duly perfected"—p. 386. Practically the whole force of the decision was that under the statute and the agreement it was competent to defend by showing that the right to possession which would have otherwise resulted from the deed under the foreclosure sale, had been by the agreement deferred. The agreement qualified and limited the rights under the trust deed. That is not our case. *Lobdell* v. *Mason,* 71 Miss., 937, and *Williams* v. *Simpson,* 70 Miss., 113, do not apply. The trust deeds are not void for illegality; and if it be true that the equitable defenses can be sustained by proof—as to the sufficiency of which proof we say nothing now—the appellees may have their day in the appropriate forum. Unfortunately with us, the distinctions between law and equity have not been abolished.

*Reversed and remanded.*