MISSISSIPPI BUILDING & LOAN ASSN. *v.* W. J. McELVEEN
ET AL.

[56 South. 187.]

1. CORPORATIONS. *Charter. Building and loan associations. Repeal. Amendment. Constitution 1890, section 178.*

Even if the charter of a building and loan association conferred upon it by express terms the right to charge more than ten per cent per annum still the state, under Constitution 1890, section 178, has the power to alter, amend or repeal such charter.

2. SAME.

The public interest is involved in every usury law, and whether or not it is for the public interest that a corporation's charter should be amended under section 178 of the Constitution is a question of legislative discretion.

3. LOCAL LAWS. *Code 1906, section 8.*

The charter of a building and loan association is not a local or private law, but is obtained under the general law and is not within Code 1906, section 8, providing that private and local laws, not revised and brought forward into the Code, are not affected by its adoption; and so is not saved from the operation of section 2678, revising the usury laws and doing away with the exception thereto, whereby building and loan associations could receive more than ten per cent interest per annum.

4. REPEAL BY CODE. *Rights, accrued or established. Code 1906, section 4-2678.*

·Where a loan is made by a building and loan association subsequent to the adoption of the Code of 1906, such loan is not saved from the operation of section 2678 of said Code, doing away with the exception in the usury laws in favor of building and loan associations, by section 4 of said Code, which provides that the repeal by such Code of any statute shall not affect any right already accrued or established.

5. BUILDING AND LOAN ASSOCIATIONS. *Usury. Received.*

Where in a settlement of a loan by a borrowing member with a building and loan association, usurious interest is charged, such interest is "received" within the Code 1906, section 2678, providing for recovery of interest paid, where usury is "received."

6. USURY. *Building and loan associations.*

 Where a fixed premium, payable monthly, added to the interest, makes the money cost more than ten per cent, the contract is illegal and usurious.

APPEAL from the chancery court of Hinds county.

HON. G. G. LYELL, Chancellor.

Suit by W. J. McElveen and others against the Mississippi Building & Loan Association. Decree for plaintiff and defendant appeals.

The facts are as follows:

This was a bill in chancery, filed by the appellees, for the recovery of an amount alleged to have been usurious interest, and paid under protest to the appellant Building & Loan Association.

The Mississippi Building & Loan Association was a mutual incorporated building and loan association. There were two classes of stockholders, one known as borrowers, and one known as non-borrowers. The stockholders subscribed to a given number of shares and paid one dollar per month per share stock subscription; the value of each share being fixed at one hundred dollars. These payments are to continue until the stock dues, plus the earnings, are equal to one hundred dollars per share, when a series is matured, and the stockholder receives the value of the share. It is estimated that the stock will mature within from sixty-six to seventy-five months, according to the earnings which accrue.

The association lends money only to its members. The borrower, who is also a stockholder, continues the payment of his monthly stock dues, and agrees, in addition to the dues on his stock, to pay fifty cents per share interest until the maturity of same. He agrees, also, to discount his stock twenty per cent. in advance.

In the instant case, McElveen held twenty six shares of stock and became a borrowing member. He discounted his stock twenty per cent. in advance, deducting five hundred and twenty dollars premium, and received

a loan of two thousand, and eighty dollars. In accordance with the by-laws of the association, he paid twenty six dollars per month stock dues and thirteen dollars per month interest. It will thus be observed that interest is at the rate of seven and one half per cent. on the actual amount received.

After the loan had run eleven months, appellant desired to cancel his contract, and applied to the association for a cancellation, which was granted. Appellant had paid into the association two hundred and eighty six dollars, as principal on his stock dues, and interest amounting to one hundred forty three dollars. In accordance with the by-laws of the association, he was allowed credit for his stock dues, with interest at the rate of six per cent. on same for the average time, and was allowed credit for the return premium, basing maturity of the stock at seventy five months, and settlement was made on this basis.

The statement rendered by the association is as follows:

### Credits.

| | |
|---|---|
| Dues, 11 months at $26.00 or total of ........ | $ 286 00 |
| 6 per cent. interest on same, or .............. | 7 86 |
| Return premium, 64-75 of $520.00, or ........ | 443 73 |
| | $ 737 59 |

### Debits.

| | |
|---|---|
| Principal ........ ........ ........ ........ | $2,600 00 |
| After deducting the credits of .............. | 737 59 |
| Leaving balance due of .................... | $1,862 41 |

Appellant claims that the interest and earned premium added together (one hundred and forty three dollars plus seventy six dollars and twenty seven cents, making a total of two hundred and nineteen dollars and twenty

seven cents) will amount to more than ten per cent. interest on the amount actually received from the association when the loan was made, and sues to recover this amount. The court found for the complainants, and held that usurious interest had been charged, because interest and premium added together would be considered as interest, and did amount to more than ten per cent., and entered a decree in favor of appellee for the interest thus forfeited as usurious.

There are two defenses set up by the building and loan association. The first is that the premium is not part of the interest, and that the interest at the rate of fifty cents per share per month would amount to only seven and one half per cent. interest on the amount actually received, and that the premium is the estimated earnings of the stock, which the appellees chose in advance to pay, in order to secure the loan. No interest was charged on the premium, and the appellant contends that the premium is a separate and distinct item from the interest, and that therefore, since the interest on the amount received is not usurious, the contract is not a usurious one.

The appellant also contends that since its charter was obtained October 29, 1904, while section 2348 of the Code of 1892 was in force, which section exempted mutual, domestic, building, and loan associations from usury charges, its charter was not affected by section 2678 of the Code of 1906, which repealed this exemption, as the stockholders' rights could not be affected by a change in the public statutes.

*F. M. West,* for appellant.

Appellant contends that if it did charge appellees more than ten per centum interest, it had the right so to do.

The appellant is a domestic, purely mutual, building and loan association, making loans to its members only.

On October 29, 1904, the appellant obtained a charter from the state of Mississippi, in the manner provided by law, section 2 of which is as follows:

"The purposes for which this corporation is formed are: To conduct a purely mutual building and loan association which shall loan money to its members upon approved real estate security, and to do all things pertaining to a corporation, and to have all the powers conferred upon a corporation by chapter 25 of the Annotated Code of Mississippi of 1892 and all amendments thereto, and section 2348 of the Annotated Code of Mississippi and all amendments thereto."

Section 2348 of the Code of 1892 reads:

"Legal rate:—The legal rate of interest on all notes, accounts and contracts shall be six per ceutum per annum; but contracts may be made in writing for the payment of a rate of interest as great as ten per centum. And if a greater rate of interest than ten per centum shall be stipulated for or received in any case, all interest shall be forfeited and may be recovered back, whether the contract be executed or executory; but this section shall not apply to a building and loan association domiciled in this state, dealing only with its members."

It will be observed that said section 2348 is a part of the charter of incorporation, and that the said charter gave appellant the right to charge its members more than ten per centum interest.

Section 2678, Code 1906, eliminated the exemption in favor of domestic, purely mutual building and loan associations, e. g.:

"Legal rate:—The legal rate of interest on all notes, accounts and contracts shall be six per centum per annum; but contracts may be made in writing for the payment of rate of interest as great as ten per centum per annum. And if a greater rate of interest than ten per centum shall be stipulated for or received, in any

case, all interest shall be forfeited and may be recovered
back, whether the contract be executed or executory."

It will be seen that the change in the two sections is
quite radical.

We contend that section 2678, Code 1906, insofar as it
seeks to deny to appellant the right to charge its mem-
bers more than ten per centum interest, if in fact it has
so charged more than ten per centum, is unconstitutional
and void, since it contravenes section 16 of the Constitu-
tion of 1890, and also section 10, article 1 of the federal
Constitution, by impairing the obligation of a contract.

The charter of incorporation procured by appellant
was a contract between the state of Mississippi and the
association. *Payne et al.* v. *Baldwyn,* 3 S. & M. 661;
*Stone* v. *Y. & M. V. R. R. Co.,* 62 Miss. 607; *Forsdick*
v. *Miss. Levee Com.,* 76 Miss. 859; *Miss. R. R. Com.*
v. *G. & S. I. R. R. Co.,* 78 Miss. 750; *G. & S. I. R. R.*
*Co.* v. *Adams,* 90 Miss. 559.

It is contended by appellees that section 178 of the
constitution of 1890 is a complete answer to the proposi-
tion just advanced.

That section is as follows, partly:

"Corporations shall be formed under general laws on-
ly. The legislature shall have power to alter, amend, or
repeal any charter of incorporation now in existence and
revocable, and any that may be hereafter created, wher-
ever, in its opinion it may be for the public interest to do
so. Provided, however, that no injustice shall be done
the stockholders."

This section appears, for the first time, as a part of the
organic law of Mississippi, in the Constitution of 1890,
none of the previous Constitutions containing it.

Similar provisions appear in the constitutions of
many other states, and owe their existence to the Dart-
mouth College case.

We say that this section does no hurt to appellant be-
cause of the proviso contained therein. Note it:

"Provided, however, that no injustice shall be done the stockholders," and further because of:

"  .  .  .   whenever, in its opinion it may be for the public interest to do so."

Does the "public interest" require that the legislature of 1906 should alter, and autocratically repeal, appellant's charter?

The public has no concern, or interest, in the appellant association. It does business exclusively with its own membership. The contract between the appellees and the appellant is one entered into with all the members of the association, and is binding upon both parties. No outsider has any interest in the contract. The company is not a stock company that loans money to outsiders like a bank, for instance, but it loans only to its own membership, and each member of the association has agreed to all the terms and provisions of the charter, constitution, and by-laws, of the association, and they are binding upon all the members of the mutual association.

*Jas. R. McDowell,* for appellant.

I come now to discuss the only point, in my judgment, upon which appellee can rely for an affirmance of the case, and which, in my judgment, the court below misconceived. That is the right of the association to require the payment of a premium by the borrower, which premium is no part of the interest. I have already discussed this subject at length from the standpoint of the Mississippi decisions. See the following cases: *Sullivan* v. *Assn.,* 70 Miss. 94; *Shields v. Assn.,* 71 Miss. 630; *Leonard* v. *Assn.,* 74 Miss. 810.

All of these cases have been quoted from before and extracts incorporated in this brief. I defy counsel for appellee to produce a single Mississippi authority which has ever held that the premium is a part of the interest, or is so considered by the court. The three cases above

cited have emphatically, in positive language, announced the principle that the premium was no part of the interest, and that the collection of the premium which if added to the interest, was not usury. The courts did hold, and we are willing to admit, that if the interest received on the actual money advanced exceeded ten per cent then such interest is usurious, but we are not willing to concede, but on the contrary, emphatically deny, that the premium is a part of the interest; and the courts have so held as above stated.

The court below seemed to go off on the idea that one hundred and forty-three dollars interest plus seventy-six dollars and twenty-seven cents premium equals two hundred nineteen dollars and twenty-seven cents interest (one horse plus one mule equals two horses). Premium is not interest under the decision of the Mississippi courts, and I propose to now show that the decision of the Mississippi court is sound upon this proposition. The better authorities, and by far the majority of authorities, hold just as the Mississippi court has held. It is text book law, and Mississippi is in line. Why now should the holding be disturbed?

I quote from 4 Am. & Eng. Ency. Law, p. 1067, as follows:

"The premium is the amount charged a stockholder for the privilege of receiving a loan, or the conventional difference between the par value and the present real value of stock."

On page 1068 the text holds that the better line of authorities, and a majority thereof, hold with the Mississippi court, and cites as the leading case, the *Sullivan case, supra,* which I discussed in the early part of this brief, and where the court speaking through Judge Woods specially held that it could not be predicated upon the collection of a premium in addition to the interest.

I call attention to the following, which appears on page 1069:

"The premium cannot be recovered by the borrower on
repayment unless specially provided, and such provisions
are to be strictly construed."

By this is meant that a premium is a thing separate
and apart from every other. In other words, if the bor-
rower is willing, in order to receive money, to pay this
premium, he may pay it in cash, or he may have it de-
ducted from the face of his loan. In either event he is not
entitled to recover in the absence of an agreement to that
effect. The appellant agrees to, and does, refund the un-
earned portion of such premium, but I cite this textbook
law to show that this was a part of the loan. It is not
principal and it is not interest; it is a bonus and has
been so defined.

I also call attention to the fact that in determining
the question of usury, stock payments are not to be con-
sidered. Neither are fines nor entrance fees nor with-
drawal fees, and the like. Neither are premiums, but
usury is determined upon the rate of interest charged
on the actual amount obtained. If the interest is more
than the lawful rate it is usurious. If not over the con-
tract rate it is not. The court must not be misled by
counsel's statement that we are charging interest on
premiums. I emphatically deny it. We are charging
fifty cents per month per share, which is not usury, and
which is only seven and one-half per cent on the amount
received. There is no way on earth of making usury
out of it. If the premium is not added to the interest
the contract can never be usurious under the mode of
operation as disclosed in this record.

*R. P. Willing* and *Frank M. Peyton,* for appellees.

The charter of appellant has not been revised, nor has
it been amended by the Code of 1906. Appellant has
now all the powers conferred upon it by chapter 25 of the
Code of 1892.

Its charter was accepted by it, subject to all the general laws of the state.  Even granting, for the sake of argument, that appellant's charter conferred upon it, by express term, the right to charge more than ten per cent per annum, yet nevertheless the state of Mississippi had the power to alter, amend or repeal that charter.

The charter in question was granted appellant subject to the provisions of the Constitution of 1890.  Section 178 is as follows:

"Corporations shall be formed under general laws only.  The legislature shall have the power to alter, amend, or repeal any charter of incorporation now existing and revocable, and any that may hereafter be created, whenever, in its opinion, it may be for the public interest to do so.  Provided, however, that no injustice shall be done to the stockholders."

The foregoing section of the Constitution of 1890 is a complete answer to the proposition advanced by appellant.

It is held by the United States Supreme Court in the case  of *Charles G. Miller et al.* v. *The People of the State of New York,* L. C. P. Book 21, p. 98, that the power to alter, modify or repeal an act of incorporation may be reserved to the state by a general law applicable to all acts of incorporation, in which case the power may be exercised whenever the charter was granted subsequently to the passage of the general laws, and the reservation is equally valid and effectual, if it existed in the constitution of the state, or in the prior general law.

The supreme court of Arkansas has held that statutes regulating contracts between corporations and their employees may be enacted under the reserved power to amend corporate charters.  *S. P. Leep* v. *St. Louis, Iron Mountain & Southern R. Company* (Ark.), 23 L. R. A. 264.

This principle of constitutional law is so firmly imbedded in the jurisprudence of the country that it is not necessary to discuss it further.

This court said in the case of *State* v. *Cotton Oil Co.,* 48 So. Rep. 300:

"Though corporations are entitled to the protection of the state and federal Constitutions, they may be dealt with differently from natural persons; their charters being subject to amendment at the legislative will."

In the case of *State* v. *L. N. R. R. Co.,* 51 So. 918, this court has also held that the legislature, under the power to alter or repeal the charter of a corporation, has power to extinguish the corporation, provided no injustice be done to stockholders.

It is contended in the first place by appellant that the public has no concern or interest in the appellant's association because it does business exclusively with its own members, and inasmuch as no outsider has any interest in the contract, the "public interest" did not require that the legislature of 1906 should alter appellant's charter.

It will be remembered that section 178 of the Constitution of 1890 provides that the legislature shall have the power to alter, amend or repeal any charter, whenever, in its opinion, it may be to the public interest to do so.

In the first place, we reply that the question as to whether it is to the public interest that a corporation's charter be amended or repealed is for the legislature to decide, and when it acts in the premises, the law presumes conclusively that the public interest required such action.

The section of the coustitution above referred to, confers the power upon the legislature to act, when in it's opinion it may be to the public interest to do so. The public is vitally concerned in the usury laws of the state, although appellant seems to think that section 2348 of the Code of 1892 was enacted expressly for it's benefit, and that no citizen of Mississippi has any interest in that section except the few members of the Mississippi Building & Loan Association.

· As a matter of fact the legislature could not pass a local, private or special law, regulating the rate of interest on money. The Constitution of 1890, section 90, subdivision, is as follows:

"The legislature shall not pass local, private or special laws in any of the following enumerated cases, but such matter shall be provided for only by general laws."

Subdivision D of said section is in the following language:

"Regulating the rate of interest on money."

If, as contended for by appellant, no one has any interest in this matter, except the few stockholders of appellant, then clearly the charter of appellant is unconstitutional, conceding that said charter conferred upon it the right to charge more than ten per cent per annum.

The public is vitally interested in this question. Every citizen of Mississippi is interested in the usury laws. Section 2348 of the Code of 1892 applied to all home building and loan associations. The public is interested in the rate of interest, which home building and loan associations shall be allowed to charge.

Counsel for appellant again contend that it's charter rights have been violated because injustice was done its stockholders by the repeal of that provision of the law which allowed it to charge more than ten per cent per annum. This argument is unsound.

It is true that since the Code of 1906 appellant cannot charge more than ten per cent per annum on its loans, but no injustice has been done its stockholders within the meaning of the Constitution.

Appellant accepted its charter with the distinct understanding that the state had the right to alter, amend or repeal its charter at any time. Its charter is subject to the general laws of the land, which laws the state can alter, amend or repeal at will.

The corporation had no vested right in the interest laws, and the repeal of the law, allowing home building

and loan associations to charge more than ten per cent
interest, does not in any way work an injustice to its.
stockholders; they are deprived of no vested rights.

WHITFIELD, C.

If it be conceded, and we do not think it is true, that.
appellant's charter conferred upon it by express terms.
the right to charge more than ten per cent. per annum,
it nevertheless remains true that the state, under the
Constitution (section 178), had the power to alter,
amend, or repeal that charter.

The contention that the public has no concern or inter-
est in the appellant association is not tenable. The pub-
lic interest is involved. in every usury law. Whether
or not it is for the public interest that a corporation's.
charter should be amended under section 178 of the Con-
stitution is a question of legislative discretion—a matter
expressly and exclusively committed to the legislature by
the Constitution. That usury laws are of general pub-
lic interest and concern is shown by section 90 of the Con-
stitution of 1890, under which local laws regulating the
rate of interest on money cannot be passed. (See subdi-
vision D of said section.)

The appellant accepted its charter with a perfect un-
derstanding that the state had the right to alter, amend,
or repeal it. Its charter was subject to the general laws.
of the land, and could be amended, repealed, or altered at
the legislative will, provided no injustice was done to
stockholders; and it is perfectly obvious that no such in-
justice as meant by the constitutional provision was done
these stockholders. The corporation had no vested right
to have the provision allowing domestic building and loan
associations to charge more than ten per cent. interest
continue always. On the contrary, they took their char-
ter, knowing fully the provisions of section 178, and their
argument here amounts to nothing, except the bold as-
sertion that the exercise of the power to repeal and

amend, granted by the Constitution, the supreme law of the land, is an injustice to them. The exercise of a perfect legal right cannot possibly operate, in the eye of the law, injustice to anybody.

The contention that this charter is a local and private law, and hence that its rights were saved by section 8 of the Code of 1906, is manifestly unsound. The charter of appellant was obtained under the general law, not under any local or private law. The law on usury is not a local or private law, and that subject was revised and re-enacted in the Code of 1906. Section 8 of the Code of 1906 has no application whatever to this case, nor has section 4 of the Code of 1906. The loan in this case was not negotiated until November 15, 1908, more than two years after the Code of 1906 went into effect. No right, therefore, had accrued or been established when section 2678 of the Code of 1906 amended section 2348 of the Code of 1892. All dealings between appellant and appellees were had, in this case, after the repeal of the law allowing home building and loan associations to charge more than ten per cent. per annum.

It is perfectly manifest from the record that the appellees were charged eleven and one half per cent. per annum for the money advanced them. The premium of twenty per cent. was a fixed premium. The by-laws themselves provided that no premium of less than twenty per cent. should be received. The facts show that interest was charged on the money actually loaned, two thousand and eighty dollars and on the premium as well. There can be no escape on the facts from the conclusion that usurious interest was charged in the settlement, and therefore "received," within the meaning of section 2678 of the Code of 1906.

The court has held in too many cases to require citation that building and loan associations cannot charge interest on premiums. The authorities may be found in the brief of the learned counsel for the appellees. Wherever a

fixed premium, payable monthly, added to the interest, makes the money cost more than ten per cent. per annum, the contract is illegal and usurious. This has been decided in so many cases that there certainly ought to be an end of litigation on this point. In the Crofton case, in the Tony case, in the Sokoloski case, this was stated with an emphasis so great that no further restatement surely is called for. The *Leonard case,* in 77 Miss. 39, 25 So. 351, was a case where a settlement was voluntarily made, and is therefore out of point here, where the money was paid, under protest. Leonard was held estopped by his conduct. There is no possible ground for estoppel in this case. The same observation is true of the *Shields case,* 71 Miss. 630, 15 So. 793. It has no application to the facts of this case. There is no merit whatever in the contentions of the appellant.                              *Affirmed.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the decree of the court below is affirmed.