MIDDLETON *et al. v.* LINCOLN COUNTY.

[84 South. 907, In Banc. No. 21411.]

1. STATUTES. *Construction harmonizing with public policy adopted; statutes in pari materia construed together.*

The courts in construing a statute considers all statutes *in pari materia* together in order to find the legislative intent, and, where a statute is susceptible of two reasonable constructions, will adopt that construction which harmonizes with the public policy of the legislature gathered from all its legislation on the subject.

2. COUNTIES. *Statute construed to authorize county loan warrants for current expenses not exceeding sixty thousand dollars, including warrants already issued.*

Chapter 470, Laws of 1920 (Senate Bill 423), provides that Lincoln county (a county having less than 30,000 inhabitants) may issue loan warrants to the amount of sixty thousand dollars to defray current expenses, and, when construed with other statutes on the same subject, means that the county may issue loan warrants to an amount not exceeding sixty thousand dollars, not excluding loan warrants already issued for current expenses, and does not mean that it may issue sixty thousand dollars in addition to loan warrants already issued for current expenses.

43—122 Miss.

3. STATUTES. *Revenue statute not construed to impose double taxation.*

Revenue statutes are considered favorably to the citizen and the taxpayer, and the court will not place a construction thereon that will impose double taxation on the citizen, unless the language is plain.

APPEAL from chancery court of Lincoln county.

HON. V. J. STRICKER, Chancellor.

Suit for injunction by Henry F. Middleton and others against Lincoln county. Injunction dissolved, and complainants appeal. Reversed, and the injunction made perpetual.

*Brady & Dean,* for appellant.

The bill of complaint in this cause is full, and with the foregoing summary, is really in itself sufficient to present complainant's contentions so that this court will see their soundness. We particularize still further, however, by calling to the attention of the court that the questions presented here are really three, as follows:

I. Whether or not the board of supervisors of Lincoln county has authority to levy a special tax to repay the fifty thousand dollars borrowed under chapter 121 of the Laws of 1918, in addition to a ten-mill tax for general expenses?

II. Whether or not the special act authorizes the board of supervisors to borrow sixty thousand dollars in addition to the fifty thousand dollars authorized by chapter 121 of Laws of 1918, and House Bill No. 647, of Laws of 1920?

III. Whether or not the provision in the special act that amounts borrowed under it may be repaid ahead of any other indebtedness is not unconstitutional, making said special act to that extent unconstitutional?

We shall discuss these questions briefly, as presented.

## I.

It is complainant's contention that the use of the words "for all purposes" in the Act of April 2, 1920, Senate Bill 531, includes every purpose not in said Act excluded, and to this maximum the board is limited, namely, ten mills on the dolar.

As opposed to this contention, defendants cite the case of *Y. & M. V. R. R. Company* v. *Grenada County*, 76 So. 154, which we insist is not applicable for the following reasons:

1. Even conceding for the sake of argument that under chapter 121 of the Laws of 1918, the board might have borrowed fifty thousand dollars for certain purposes and have repaid it by a special tax, this authority existed only so long as chapter 121 of the Laws of 1918, was in force and effect. This chapter was expressly repealed by act taking effect upon May 16, 1920, prior to the filing of the bill of complaint in this case, and while House Bill No. 647 of Laws of 1920, also provides for a special tax to repay sums borrowed under it, the causes thereby authorized are different and the method of repayment is different. It does not, therefore authorize a special tax to repay amounts borrowed under chapter 121 of the Laws of 1918.

The rights of the holders of the county's loan warrants issued to secure the fifty thousand dollar loan under chapter 121 of the Laws of 1918, are not in any way affected by this necessary interpretation of the acts, for they will be fully protected by a levy of ten mills on the dollar on the county's 1920 assessment.

2. The objection in this case as raised before the board, by any sort of mistake, honest or otherwise, has

incurred excessive indebtedness. The attitude of the complainants in this case, therefore, is that of the complainants in the case of *W. B. Strong et al.* v. *Monroe County,* reported in 29 So. 530, under the style of *Monroe County* v. *Strong.* The contemplated additional loan by the county would create a debt in excess of the county's revenue for the year· and therefore, is beyond the authority of the board.

## II.

The question of whether or not the legislature knew of the desire of Lincoln county to borrow as much as one hundred and ten thousand dollars is not material. It is complainants' contention that the language of the special Act is such that there can be no doubt that it was in effect only an increase of the maximum allowed them by the general law. Intending to authorize Lincoln county to borrow as much as sixty thousand dollars, and with authority already existing to borrow fifty thousand dollars, the legislature had two ways in which they might express this additional authority, namely:

A. Authorize sixty thousand dollars. "In addition to existing authority," or words to that effect.

B. Authorize a borrowing of sixty thousand dollars.

The legislature adopted the second mode of· expression, and expressing it so, it is complainant's contention that if it had been intended to give authority to borrow one hundred and ten thousand dollars, the act would have said specifically "in addition to existing indebtedness, or authority to borrow," or words to that effect. Also, the legislature had reason to know that Lincoln county's assessment would not be as high as twelve or thirteen million dollars, which it would have to be in order for sufficient money to be· raised by a ten mill levy to repay any such loan, with· interest, and with other general causes.

### III

Finally, Senate Bill No. 423 the "Special Act" referred to, is partially unconstitutional in' so far as it attempts to prefer the holders of the loan warrants of the county, issued under its provisions, over the holders of warrants issued prior thereto under the provisions of chapter 121 of the Laws of 1918, or other previously existing indebtedness payable out of the taxes of 1920. The equity of this position is too plain for argument and it should be held that the ten thousand dollars borrowed under its authority shall be repaid on an equal basis, and at the same time as previously incurred and existing indebtedness.

The subject-matter of this litigation is important, to complainants no less so than to other citizens of the county who will be vitally affected by illegal and *ultra vires* action of the board of supervisors. To facilitate a hearing, counsel have agreed to many minor points, but complainants earnestly request most serious consideration of the questions presented since they involve questions not heretofore decided by this court, and which affect not only Lincoln county, but the counties of the entire state, whose financial destinies are within the hands of boards that all too frequently are scarcely controllable by its citizenry, the legislature and this court.

*A. A. Cohn* and *H. V. Wall,* for appellee.

Appellants contend that under no circumstance can Lincoln county borrow one hundred and ten thousand dollars to defray the current expenses for the year 1920, because they say the assessed valuation of Lincoln county is in round numbers eight million five hundred thousand dollars, and that the general revenue tax for the year 1920, being ten mills, could yield to the county only

eighty-five thousand dollars for the year 1920 and inasmuch as the revenues collected for the year 1920 under a ten-mill levy, as aforesaid, will not yield as much as the loan made for the current expenses for the year 1920, therefore the act on the part of the county is null and void.

This contention is based on false premises. In the first place it is necessary to trace briefly the history of the laws of our state, granting to the various counties the right to borrow money in anticipation of taxes to defray current expenses. This statute first appears in the Code of 1892, section 313: "May borrow money, etc., in counties of more than thirty thousand inhabitants; the board of supervisors for the purpose of defraying the expenses of the county, other than its judiciary expenses, may borrow money not exceeding one hundred thousand dollars in one year, and may execute loan warrants upon the treasury of the county therefor. The loan warrants shall bear interest at a rate to be fixed by the board, not exceeding eight per cent. per annum, and they shall be payable upon the first day of January next after their issuance. For the payment of such loan warrants the board of supervisors may levy a special tax each year sufficient to pay the amount borrowed that year, with interest, and such loan warrants shall be first paid out of the money collected for taxes for that year. Loan warrants shall not be issued save upon the same limitations, restrictions and conditions as are provided in this chapter for the issuance of bonds." It will be noted from this section a county having less than thirty thousand did not have the privilege and power to borrow any amount for the purpose of defraying the expenses of the county other than the judiciary. The point that I desire to call the court's attention to in this original statute is, that the counties that had the right to borrow money under the afore-

said provisions had a right to levy a special tax with which to pay the loan.

We next find this law in the Code of 1906, section 334: ''May borrow money, etc., (Laws 1904, chapter 133) in counties of more than thirty thousand, the board of supervisors may borrow money not exceeding one hundred thousand dollars in one year, and in counties of less than thirty thousand inhabitants not more than fifty thousand dollars in one year, for the purpose of defraying the expense of the county other than the judiciary, and may execute loan warrants upon the treasury of the county therefor. And said board may borrow said money as hereinbefore provided from its county treasurer, who is authorized to loan said board not exceeding said amount out of its fund or funds in the treasury not otherwise appropriated for the expenses of the current year. The loan warrants shall bear interest at a rate to be fixed by the board, not exceeding eight per cent. per annum, and they shall be payable on the first day of January next after their issuance. For the payment of such loan, the board of supervisors may levy a special tax each year sufficient to pay the amount borrowed that year, with interest and such loan warrants shall be first paid out of money collected for taxes for the year. Loan warrants shall not be issued save upon the limitations, restrictions and conditions that are provided in this chapter for the issuance of bonds.'' The main difference between the provisions of section 313 of the Code of 1892 and section 334, Code of 1906, is that the counties having less than thirty thousand inhabitants are authorized to borrow as much as fifty thousand dollars to defray the current expenses for the particular year in which the loan is made.

I again call the court's attention to the fact that boards of supervisors of the various counties are under the provisions of section 334 of the Code of 1906, given the power and right to levy a special tax for the pur-

pose of raising money to pay the loan for that particular year.

The history of this act, if it be traced chronologically, leads us to the cause of *Yazoo & M. V. R. Co.* v. *Grenada County, et al.,* 76 So. 154, where the question was raised as to whether or not a county could levy a tax in addition to the tax for general county expenses, with which to liquidate a loan secured under section 334 of the Code of 1906. In other words, did the words: "Special Tax" mean a tax in addition to the general revenue tax levied in each county? Grenada county had borrowed money for the year 1916 and executed its loan warrants therefor, due and payable on January 1, 1917. In order to pay these loan warrants, on said date, it levied a tax of eight mills for payment of loan warrant, and interest due thereon, January 1, 1917. It also levied a tax of four mills for general county expenses, and the tax levy totaled in the county twenty-five and one-half mills. The Grenada case is a much stronger case than the instant case for the reason that the legislature limited the sum total of the taxes that could be levied in 1916 and 1917 to sixteen mills. The legislature of 1918 and 1920 passed no limitations upon the sum total of all the taxes to be levied. The supreme court in the Grenada case held that the words "special tax" as used in section 313 of the Code of 1892, section 334 of the Code of 1906, meant exactly what it said, and that where a county had the right to levy a tax to pay a loan of the above nature in addition to the general taxes, that it was authorized to levy for general expenses. In other words, if the legislature authorized the board of supervisors to levy a tax of ten mills for general revenue purposes, and the board had executed a loan during the year and they desired to pay the same by levying a special tax therefor, they had the power to levy a special tax, say of five mills, with which to pay the same, in addition to the tax levy of ten mills for general or current expenses,

and this money raised by the special tax of five mills would be applied to the payment of the loan warrant, and the money raised by the ten-mill levy could be used for other expenses just as the board would see fit to use it. This decision by the enactment of chapter 121 of the Laws of 1918, was ratified by the legislature of 1918, and there can be at present no question about the meaning of the words "special tax" as used in these various acts above set forth.

We come next to chapter 121 of the Laws of 1918, under which the county of Lincoln borrowed fifty thousand dollars on March 2, 1920. The only change in the law as we find it in chapter 121, Laws 1918, is that the date of the payment of the loan warrants is changed, and the loans are not made upon the limitations and restrictions provided for the issuance of bonds. I call the court's attention to the fact that the legislature continued to grant the various counties the right to levy a special tax for the purpose of paying these loans thus incurred.

We think that the Grenada case is decisive of the case in hand, for the reason that if Lincoln county should borrow one hundred and ten thousand dollars, she would have the right to pay fifty thousand dollars by a special tax, and she would realize eighty-five thousand dollars in the year 1920 under the general tax levy of ten mills. The fifty thousand dollars could be paid out of the special tax, and the remaining sixty thousand dollars could be paid out of the eighty-five thousand dollars collected under the general revenue taxes, of ten mills. In other words, there is no conflict between the Special Act which we will refer to later, and the general act above mentioned.

As above stated, on March 6, 1920, by S. B. 423, Lincoln county was authorized to borrow sixty thousand dollars; to issue its loan warrants therefor; to pay for the same, first out of the taxes collected for 1920.

No mention is made of chapter 121, Laws of 1918, and it must be borne in mind at this point that fifty thousand dollars had already been borrowed by Lincoln county on March 2, 1920, and if it was the purpose and intent of this special act to authorize Lincoln county to borrow the sum total of sixty thousand dollars in the year 1920 the special act would have given Lincoln county the right to borrow in addition ten thousand dollars, for it already had the right to borrow fifty thousand dollars under chapter 121, Laws 1918, and in truth and fact it had already borrowed, as above stated, on March 2, 1920, the sum of fifty thousand dollars.

The question arises: Did the special act of March 6, 1920, repeal the general laws as set forth in chapter 121, Laws 1918? It is seen in section 177, 25 R. C. L., that a local act does not repeal a general act, nor does a general act repeal a local act unless there is an irreconcilable conflict between the two acts. It is a general rule of law that statutes are not repealed by implication, but are repealed only when expressly so stating, or when there is an irreconcilable conflict between the two statutes. Now, to summarize the situation, we can say thus: Lincoln county was authorized to borrow fifty thousand dollars under chapter 121, Laws 1918. This sum is borrowed on March 2, 1920. On March 6, 1920, this special act was passed, authorizing it to borrow sixty thousand dollars. Certainly the act of March 6th, did not repeal the general law of chapter 121, Laws 1918, first, because it did not say so; second, it does not indirectly say so; third, under chapter 121 of the Laws of 1918, the board may levy a special tax to pay the money borrowed thereunder; under the special act no such power is granted; under chapter 121 of the Laws of 1918, the loan is made payable on the 15th day of February, 1921; fourth, under the special act of March 6, 1920, the loan is made payable on the first Monday in February, 1921; fifth, under chapter 121, Laws 1918,

the board is given authority to borrow money from the treasurer. Under the special act no such power is given the board. In 36 Cyc., 1090, it is provided that when the provisions of a general law, applicable to the whole state, are equivalent to the provisions of a previously enacted special law, applicable in a particular locality only, the passage of such general law does not operate to modify or repeal the special law, either in whole or in part, unless such modification or repeal does provide for by express words or arises by necessary implication. In the same volume of Cyc., page 1093, it is said: "A special act will not repeal a general law unless there is a manifest repugnancy between their provisions or one was obviously intended as *pro tanto* a substitute for the other."

The last step in the history of this particular provision authorizing the county to borrow money was enacted by the legislature of 1920, H. B. 647, March 17, 1920, but did not take effect until sixty days from the date of its passage. Therefore, the 1920 act which is hereinafter set forth, did not take effect until after the filing of the bill of complaint in this case.

It will be noted from this act that the powers granted to the counties are fundamentally the same as they had always been. The counties were still given the power to levy a special tax to pay for the loan for that particular year. Certainly this act, which did not take effect until May 17th, did not repeal the special act of March 6, 1920; did not repeal chapter 121 of the Laws of 1918.

Summarizing, we can say that Lincoln county had the right under the general law, as set forth in chapter 121 of the Laws of 1918, to borrow not more than fifty thousand dollars; and to pay therefor by a special tax in addition to its general revenue taxes, which was fixed by the legislature of 1920 at ten mills. Lincoln county was authorized next to borrow sixty thousand

dollars, under a special act of March 6, 1920. The special act did not repeal the general act because there is no conflict between the two. The two acts can be construed harmoniously together, and will be paid out of a separate and distinct fund. The fifty thousand dollars will be paid out of a special tax to be levied for the purpose, and the sixty thousand dollars will be paid out of the taxes levied and collected under the ten-mill levy for general revenue. purposes. This being true, we think the lower court was manifestly correct in holding that Lincoln county, acting under the general and special laws. had a right to borrow a sum not exceeding one hundred and ten thousand dollars, to defray the current expenses of the year 1920.

ETHRIDGE, J., delivered the opinion of the court.

Lincoln county has a population of less than thirty thousand and. an assessed valuation of eight million five hundred thirty-two thousand three hundred and sixty-two dollars. On the 1st day of March, 1920, the county issued loan warrants in anticipation of taxes for fifty thousand dollars. The statute then in force (chapter 105, Laws 1918) provided:

"That county boards of supervisors may levy taxes for all purposes (exclusive of all county or district road taxes, courthouse, tick eradication, county common school, agricultural high school and all other county or district school taxes) at a rate not exceeding eight (8) mills on the dollar for the year 1918 and eight (8) mills on the dollar for the year 1919, exclusive of the state levy or tax rate fixed and provided for in section 1 of this act."

Chapter 121, Laws 1918, amended section 334, Code 1906, so as to read as follows:

"334. May Borrow Money, etc. (Laws 1904, chapter 133)—In counties of more than thirty thousand inhabitants the board of supervisors may borrow money

not exceeding one hundred thousand dollars in one year and in counties of less than thirty thousand inhabitants not more than fifty thousand dollars in one year, for the purpose of defraying the expenses of the county, and may execute loan warrants upon the treasury of the county therefor. And said board may borrow said money, as hereinbefore provided, from its county treasurer, who is authorized to lend said board not exceeding said amount out of any fund or funds in the treasury thereof not otherwise appropriated, for the expense of the current year. The loan warrants shall bear interest at a rate to be fixed by the board, not exceeding six per cent. per annum; and they shall be payable not later than the fifteenth of February of the year succeeding the year in which they are issued. For the payment of such loan, the board of supervisors may levy a special tax each year sufficient to pay the amount borrowed for use that year, with interest, and such loan warrants shall be paid out of money collected for taxes for the year in which they are issued. Loan warrants shall not be issued save upon the limitations, restrictions and conditions as are provided in this chapter for the issuance of bonds.''

On March 6, 1920, Senate Bill 423 passed the Senate, and passed the House March 13, 1920, and was approved by the Governor March 23, 1920. This act provided:

''That the board of supervisors of Lincoln county, Mississippi, be and they are hereby authorized and empowered to borrow a sum of sixty thousand dollars ($60,000) or as much thereof as may be necessary, to defray the current expenses of Lincoln county, Mississippi, including judiciary expenses, for the year 1920. Said sum of money so borrowed, with interest thereon, shall be payable on the first Monday of February 1921, and shall be first paid out of the money collected for the taxes of said year for the year of 1920.''

On May 8, 1920, the board of supervisors issued loan warrants under this act to the extent of ten thousand dollars, and was about to negotiate a further loan of fifty thousand dollars under this special act when certain taxpayers filed an injunction against so doing. The legislature in 1920 passed Senate Bill 531, authorizing a tax levy for county purposes of ten mills on the dollar. Section 2 of that act reads as follows:

"Boards of supervisors of the various counties may levy taxes for all purposes exclusive of county and district road taxes, common school and agricultural high school and other district school taxes at a rate not exceeding ten mills on the dollar for the year 1920, and ten mills on the dollar for the year 1921, exclusive of the tax rate fixed and provided for in section 1 of this act."

The legislature of 1920 enacted House Bill 647, which passed the legislature and was approved March 17, 1920, and became effective sixty days after its approval, and which amended chapter 121, Laws 1918, which reads as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that in counties in Mississippi having more than thirty thousand inhabitants, the board of supervisors may borrow money not exceeding one hundred thousand dollars in one year in anticipation of taxes, and in counties of less than thirty thousand inhabitants not more than fifty thousand dollars in one year, in anticipation of taxes, for the purpose of defraying the expenses of the county, and may issue their negotiable notes therefor maturing not later than February 15th of the year succeeding the year in which they are issued. And the board may borrow said money as hereinabove provided from its county treasurer, who is authorized to lend said board not exceeding said amount out of any fund of funds in the treasury of the county not otherwise appropriated, for the expense of the cur-

rent year. The notes herein authorized shall bear interest at a rate to be fixed by the board, not exceeding six per cent. per annum, and said interest may be evidenced by coupons attached to said notes, and said notes shall be payable at any place to be named by the board of supervisors.

"For the payment of such loan the board of supervisors shall levy a special tax each year sufficient to pay the amount borrowed for use that year, with interest, and such notes shall be paid out of the first money collected for taxes for the year in which they are issued. Said notes shall not be issued until the board of supervisors shall have published notice of its intention to issue same, said notice to be published once each week for three weeks in some newspaper having a general circulation in said county, with not less than twenty-one days nor more than sixty days intervening between the time of the first notice and the meeting at which said board proposes to issue said notes, and if within that time ten per cent. of the adult taxpayers of the county, exclusive of those who pay poll tax only, shall protest against the issuance of said notes, then said notes shall not be issued unless authorized by a majority of the qualified electors of said county, voting at an election to be called and held for that purpose.

"Sec. 2. That section 334 of the Mississippi Code of 1906, and chapter 121 of the Laws of Mississippi of 1918, and all other laws and parts of laws in conflict herewith, be and the same are hereby repealed."

On the hearing for the injunction it appeared that the board of supervisors had issued fifty thousand dollar loan warrants on March 1, 1920, under chapter 121, Laws 1918, and had issued ten thousand dollars under Senate Bill 423, and were fixing to issue fifty thousand dollars more under Senate Bill 423. The population of the county was agreed to be less than thirty thousand inhabitants, and the assessed valuation was agreed

as being eight million five hundred thirty-two thousand three hundred and sixty-two dollars.

The chancellor dissolved the injunction, holding that the county was entitled to issue fifty thousand dollars more or in addition to the loan warrants already issued, and the complainants appealed here.

The appellant contends that chapter 470, Laws 1920, Senate Bill 423, contains the maximum amount to be issued, and that it only authorizes the issue of ten thousand dollars above the fifty thousand dollars already issued, or, in other words, a maximum of sixty thousand dollars all told, while the county contends that it is entitled to issue the original fifty thousand dollar loan warrants, and, in addition to that, sixty thousand dollars under a special act (chapter 470, Laws 1920), making a total of one hundred and ten thousand dollars, and that, as said amounts will exceed the revenues authorized at ten mills on the dollar, it is entitled to levy a special tax over and above the ten mills for the payment on the loan warrants first issued, to wit, fifty thousand dollars, and that the eighty-five thousand dollar taxes authorized for all purposes would pay the principal and interest of the sixty thousand dollar loan warrants under the last act.

It will be noted from reading chapter 121, Laws 1918, above set out, and as amended, that counties having less than thirty thousand inhabitants are limited to fifty thousand dollars issuance of loan warrants in anticipation of taxes. The special act (chapter 470, Laws 1920) above set out neither in its title nor in the body of the act indicates that the sixty thousand dollars authorized is to be in addition to the fifty thousand dollars already issued, nor is there any recital anywhere in the special act showing any purpose or reciting any fact from which any purpose may be gathered that it is to be in addition to and exclusive of the fifty thousand dollars authorized under the general law. As we con-

strue the act, it is an enabling act conferring power on Lincoln county, as a favored county, raising the limitation above that of other counties of equal size and population, and expresses its own amount which the county is authorized to issue in anticipation of taxes.

In construing the statute we are to consider all statutes *in pari materia* and to deduce the legislative intention from a consideration of all the statutes as indicating the legislative policy. It has long been the policy of the legislature to limit both the debts which the county may contract and the amount of money that may be levied for county purposes. We see no reason to believe that the legislature intended to place Lincoln county above the larger and more populous counties of the state in its power to incur debts or to raise taxes, and we see no reason to believe from the acts themselves that the legislature contemplated giving Lincoln county power to issue loan warrants in excess of the amount that may be issued by the largest and most populous counties of the state. We can only consider the language of the several acts in ascertaining the legislative intent. *Abbott* v. *State,* 106 Miss. 340, 63 So. 667. To hold that a county may issue fifty thousand dollars under the general law and sixty thousand dollars under a special law would be to exceed the levy fixed by the legislature for the county for all purposes. To sustain the argument that this may be done it is contended that the county may in addition to the tax fixed and authorized by the legislature levy as much more taxes as would be necessary to meet the issue of fifty thousand dollars of loan warrants first issued.

The revenue laws are construed favorably to the citizen and taxpayer, and the court will not place a construction that will impose double taxation upon the citizen unless the language is plain. *State* v. *Simmons,* 70 Miss. 485, 12 So. 477; *Vicksburg, etc., Ry. Co.* v.

44—122 Miss.

*State,* 62 Miss. 105; *Wilby* v. *State,* 93 Miss. 767, 47 So.
465, 23 L. R. A. (N. S.) 677.

In *Monroe County* v. *Strong,* 78 Miss. 565, 29 So.
530, this court dealt with the history and general public
policy of the state as expressed in its constitution and
laws with reference to counties incurring obligations and
making expenditures in excess of the revenues of the
county, and reached the conclusion that it was the policy,
of the state to restrict current expenditures to the
amount that would be derived from taxation during the
current year within legal limits. In the course of the
opinion in that case the court said:

"The law in the light in which this case must be
decided cannot be ascertained by a view of any statute
taken alone, but must be found by an examination of all
the constitutional and statutory legislation touching
the jurisdiction and powers of the board of supervisors
and the administration of county finances."

We think the decision of that case established the
principle that extraordinary expenditures exceeding the
limitations placed on the counties by law will not be
sustained unless the authority to do so is clear. Of
course the legislature has power by a general law to
either fix a limitation high or low. But where the
legislature is singling out a particular community or
county for discrimination either favorable or unfavor-
able, courts will not by construction carry the act be-
yond the language used by the legislature. To do so
would raise serious complications involving constitu-
tional principles. For instance, the first loan warrants
of fifty thousand dollars under the law under which they
were issued pledged the county revenues to their pay-
ment. The special law also pledged the revenues first to
the payment of the loan warrants therein, authorized,
and the legislature certainly did not intend to give two
different sets of loan warrants first and prior right to

the county funds. Taking all of the acts above set out and trying to produce a harmonious conclusion consistent with common sense and natural justice, we think the legislature did not intend to authorize Lincoln county to exceed sixty thousand dollars issuance of loan warrants.

The judgment of the court below is reversed, and the injunction made perpetual.

*Reversed and judgment here.*