QUITMAN COUNTY *v.* TURNER.

(In Banc.   May 8, 1944.)

[18 So. (2d) 122.   No. 35557.]

P. L. Denton, of Marks, for appellant.

748

**Dulaney & Bell**, of Tunica, for appellant.

**W. A. Cox,** of Marks, and **Roberson & Luckett,** of Clarksdale, for appellees.

Argued orally by **F. S. Dulaney,** for appellant.

**Alexander, J.,** delivered the opinion of the court.

This cause involves the applicable salary basis for the county judge of Quitman County. By chapter 131, Laws 1926, county courts were established in all counties, meeting fixed requirements as to assessment valuations and population. Smaller counties were authorized to establish such courts after election expressing the will of the citizens to this end. Such court was so established by the people of Quitman County which falls within a classification whereby the salary of the county judge was fixed at $2,000. This was the status of such courts when the Code of 1930 was adopted, which included a chapter on County Courts (Sections 693-708). At the latter date there were in existence county courts of each category, namely, those established by the Act of 1926 and those in the several classes which had availed of the enabling provisions of the Act by elections. Chapter 17 of the Code of 1930, just referred to, is a substantial rescript of the 1926 Act, particularly in those respects relevant to the present inquiry.

In an obvious attempt, both to acknowledge the existence of courts theretofore established and to provide for others to be established by proclamation of the governor or by popular referendum, Section 693 used the following language in its initial statement: ''In and for each county of the state wherein a county court is now in existence, and hereafter in and for each county which has'' the population and assessment requirements authorizing automatic establishment, ''there shall be an inferior court to be known as the county court.'' It is clear that courts theretofore existing were not thereby created but were rather recognized.

Section 6 of the 1926 Act, after fixing the qualifications of the county judge, provided "He shall receive a salary of thirty-six hundred dollars per year." Without further reference, this basis would seem to apply to the judges of such courts, however established. But in the latter part of the same section a sliding salary scale is set forth, under which, as stated, Quitman County would fall in a $2,000 category.

Under the 1930 Code, the first part of Section 6 of the 1926 Act was carried forward, section 697, but the graduated scale applicable to smaller counties electing to qualify was transplanted in haec verba into Section 706, Code 1930 (2 Miss. Code 1942, Section 1618). This latter section, however, was with a single exception, hereinafter noted, a rescript in words and figures from Section 6 of the 1926 Act. The latter act dealt with only two categories, namely, those automatically created, and those which should elect to come thereunder, hence the opening sentence of that part of Section 6 (which later became Section 706, Code 1930) : "Provided, that in any county not affected by the provisions of this act . . ," an election may be held to decide whether such court is desired. The introductory clause of Section 706 of the 1930 Code, enacted at a time when there were in existence courts established under both procedures, reads as follows: "In any county not brought within the provisions of this chapter by the terms of the first section thereof . . ." an election may be held to this end. The salary bases are set forth following this language: "The salary of the county judge in all counties which may come under the provisions of the chapter by a special election, shall be fixed as follows: . . ." Such was substantially the language of the original act, and there being no counties theretofore qualified by election and no such courts then "in existence," it was properly prospective. However, when the same language is carried forward six years later, after many counties had so qualified, a retention of the same prospective words creates a seeming hiatus

whereby counties theretofore qualified are bound by no explicit language to any fixed basis unless they seek cover under Section 697 of the 1930 Code (2 Miss. Code 1942, Section 1608). As already stated, this section is lifted bodily from the 1926 Act and provides a salary of $3,600 in those counties automatically established by that Act. Had the language of Section 706 read "in all counties which may or have come under the provisions of this chapter by special election" there would unquestionably have been no litigation here. It is just here that the legislature should have looked both ways—forward and backward—and thus have avoided the collision between the letter and the spirit of the Act.

We are brought now to the facts of the instant case. P. H. Lowrey was appointed county judge of Quitman County in 1935, was afterwards elected and served until his death in May, 1941. During his tenure, he received a salary of $2,000 per year, this being the applicable basis when the county established the court. An agreed statement of facts reveals that this distinguished incumbent took over the duties of the office upon the assumption that the original basis was applicable, and that "he supposed that was about all it was worth and he was satisfied to act as county judge for the salary of $2,000." It is further disclosed therein that he stated to the attorney for the board, of supervisors that, under the law, he was entitled to a salary of $3,600. The two statements are saved from inconsistency by the assumption that the latter was made as a result of subsequent advice or examination of the several statutes. After the death of Judge Lowrey, suit was brought by his executor for adjustment of the difference between the bases of $3,600 and $2,000 during the period of his incumbency. The circuit judge sitting as trier of both the law and the facts gave judgment for the executor. The county appeals.

The nub of the present case is this: Did the codifiers of the 1930 Code and the legislature intend to retain all county courts established in the smaller counties by elec-

tion upon the progressive scale set forth in the original act and in the 1930 Code, or did they intend to place in the category of the largest counties (in which courts were automatically established), all of the elective courts as were then existing? To support his contention, appellee clings tenaciously to the words of the 1930 Code, which opens with the quoted language "In and for each county of the state wherein a county court is now in existence, and hereafter in and for each county," which is large enough to fall in a class justifying automatic establishment. Section 697, Code 1930, thereupon states flatly, "He shall receive a salary of thirty-six hundred dollars."

It will be seen that Section 693, above quoted, while taking note in its opening sentence of pre-existing courts, whether elective or automatic, does not refer to the future establishment of any courts save those which the law itself thrust upon a county. Provision for smaller counties seeking in the future to qualify by vote is made in Section 706. The Act of 1926 had stated equally as flatly that "he shall receive a salary of thirty-six hundred dollars per year," but no ambiguity was thereby caused since the act later provided the elective scheme of qualification by smaller counties and set up a graduated scale of salaries. At the risk of prolixity, we again emphasize the circumstance that while pre-existing elective courts were recognized and "re-established" by the 1930 Code, their salary bases were retained in that part of the chapter which carried forward the elective scheme (Section 706) and which by a too faithful rescript of the original act was left prospective only. The smaller counties "now in existence" were therefore screened away from their fellows by the meshes of language whose letter is seized upon by appellee and whose spirit is besought by appellant.

Legislative intent as an aid to statutory construction, although often elusive to the perception of unaided vision, remains nevertheless the pole star of guidance. Appellee

invokes an elemental formula acceptable to lay and legal usage that what the legislature said is clear and unambiguous and what it meant is to be found simply by what it said. This formula should not be discredited. It is only by words that statutory intent is to be disclosed, but it does not follow that such intent is always accurately so revealed. Ambiguity is not solely the product of obscurity. The invoked phrases are clear, grammatical, and without patent ambiguity. We are not to construe clarity out of obscurity but intent out of inconsistency. "A salary of thirty-six hundred dollars" has mathematical exactness. But who is meant by the phrase "He shall receive." If this means all judges then in office, it automatically doubles the salary in the smallest counties, whereas, before induction into the later act, it referred only to the largest class. Further, it separates such counties from their counterparts which later qualify by election. Passing over words which are means to the end of legislative intent, must we say that it was the purpose to have some counties in a certain class to pay $1,800 while others must pay $3,600? Such construction would at least challenge Section 90 (o) of our Constitution, which provides that "The legislature shall not pass local, private, and special laws in any of the following enumerated cases . . .: . . . '. (o) Creating, increasing, or decreasing the fees, salary, or emoluments of any public officer." Toombs v. Sharkey, 140 Miss. 676, 106 So. 273, 274. Cf. Smith v. Chickasaw County, 156 Miss. 171, 125 So. 96, 705.

It is not intended hereby, however, to avoid the act or any of its provisions upon constitutional grounds, but rather to indicate the untoward results consequent upon a construction in compliance with appellee's demand. It is our duty to support a construction which would purge the legislative purpose of any invalidity, absurdity or unjust inequality. Robertson v. Texas Oil Company, 141 Miss. 356, 106 So. 449. To this end, not only the language but the purpose and policy which the legislature

had in view must be considered. Smith v. Chickasaw. County, supra.

Chapter 17 of the 1930 Code is not a repeal but a re-enactment of the applicable provisions of the Act of 1926. As stated in Millwood v. State, 190 Miss. 750, 756, 1 So. (2d) 582, 583: "The construction last suggested would drain the graduations provided by the statute of all reason; and it is a maxim of construction of legislative enactments that they shall be so interpreted as to bring them into conformity with the manifest' purpose and reasons which lie at their foundations. But here the change was in a general revision of the statutes of the state, and as to this the authorities all say that 'no rule of statutory construction rests upon better reasoning than that in the revision of statutes, alteration of phraseology, the omission or addition of words, will not necessarily change the operation or construction of. former statutes. The language of the statute as revised or the legislative intent to change the former statute must be clear before it can be pronounced that there is a change of such statute in construction and operation.' " See also City of Belzoni v. State, 186 Miss. 623, 191 So. 657; State Tax Commission v. Mississippi Power Co., 172 Miss. 659, 160 So. 907.

We could find no legitimate basis for placing Quitman County in the highest bracket when all other counties similarly categoried were classed in next to the lowest. The mere incident that it was "in existence" when the 1930 Code was adopted would be artificial and arbitrary. A similar hiatus in language and statutory arrangement is found in the same section, the two intermediate categories are fixed respectively as between assessment valuations of eleven million to fourteen million, and from five million to fourteen million. The words were conformed to the obvious intent by a later statute. In Smith v. Chickasaw County, supra, the statute (Chapter 122, Laws 1920) provided a graduated scale for salaries of circuit clerks based upon classification of counties according to

assessment valuations. It provided that when a county attained the appropriate increase in valuation, the salary should be increased to conform to the attained category. However, no provision was made whereby there should be a corresponding decrease in salary when the valuation fell into a lower bracket. In construing the statute to conform to evident legislative policy despite its verbiage, Justice ANDERSON speaking for the court said [156 Miss. 171, 125 So. 98]: "One of the outstanding purposes of Chapter 122 of the Laws of 1920 was to base the salaries of certain county officials named in the statute, including circuit clerks, on the assessed values of their counties for the purpose of taxation. If appellant's contention be sound the whole scheme of the statute in that respect might be defeated. . . . We are of opinion that, taking the statute under consideration as a whole, viewing its language and policy all together, the legislature intended that the salaries of the circuit clerks should decrease as well as increase, according to the changing classes of the county, whether up or down."

As illustrative of resultant inequality and injustice, it is observed that when Quitman County established its court its electors were aware of and voted with a view to a salary expense of $2,000 per year. Such salary was not only statutory but commensurate with its financial abilities. Appellee's construction of the 1930 Act would impose upon it arbitrarily the maximum salary basis without their consent and contrary to their ability or the conditions of their qualification. Further disclosing what would constitute legislative absurdity, it is pointed out that to circumvent the tyranny of stark verbiage, the county could by referendum lift itself out of its path and when the momentum of the new statute had passed resume its status in its wake completely absolved of its arbitrary burden and restored to its original status, thereafter to enjoy the fellowship and privileges of its equals upon a just and common basis. By turning the statute

back upon itself, it could frustrate its purpose by its own devices.

Without justifying our views by further prolonging the discussion, we seek again to underscore intent, which is the end of language, in contrast with mere words which are its means. In Roseberry v. Norsworthy, 135 Miss. 845, 100 So. 514, 517, this court, after invoking as a criterion for divining intent "the entire legislation on the same subject-matter, its policy and [its] reason" held that the word "maximum"—a completely unambiguous word per se—meant its exact opposite, "minimum". In Gandy v. Public Service Corporation of Mississippi, 163 Miss. 187, 140 So. 687, the language was corrected to conform to the obvious intent. A solution which ignores all but mere words and would release the chapter from its entanglement by cutting it loose from its anchorages with the simple device of a literal interpretation, would be as ruthless and destructive of future usefulness as the impatient cutting of an actual knot. It is easy enough to say that the legislature is held to mean what it has said. It is not so easy to say with assurance that it meant to say what it said. Nor should we dismiss all doubts by employing a judicial rule of thumb whereby a presumption is indulged that whatever a statute says is always what it means. We are concerned not with what isolated words mean but what the legislature intended to do. Our task is not to construe a phrase but a statute. The ambiguity is not in the language of a single sentence but is begotten of a disharmony throughout the statute.

It is quite clear that the legislature was not repealing the 1926 Act. It is as if a new statutory structure had been built about the old and the corner-stone of equality, though retained as an integral part of its foundation, had become dislodged, leaving out of plumb its chief support. In fashioning its contours to a modern pattern, its date and identifying marks have become obscured by an inadvertent sweep of the legislative trowel. It involves no violent nor unwarranted assault upon the edifice to adjust

it to its original setting and from legislative history to restore its original inscriptions. The statute must be construed to avoid unthought of and unjust results. Zeigler v. Zeigler, 174 Miss. 302, 164 So. 768. See 13 Miss. Digest, Statutes, Key No. 181(2). Such interpretation should preserve a consistent and practical operation. Miers v. Miers, 160 Miss. 746, 133 So. 133. We should consider the consequences of any particular construction, whether they be good or bad, just or unjust, reasonable or absurd. L. H. Conard Furniture Company v. State Tax Commission, 160 Miss. 185, 133 So. 652. Moreover, the history of the legislation, its plain purpose, and its spirit and reason, should be taken into account. Zeigler v. Zeigler, supra; White v. Miller, 162 Miss. 296, 139 So. 611, 614. The last case dealt, as here, with the salary of a public officer. The court said "The statutes presented to us for consideration are not complete if a literal construction . . . is invoked." In Middleton v. Lincoln County, 122 Miss. 673, 84 So. 907, 909, this court in construing a statute so as to avoid placing that county in a category inconsistent with others of like size justified its interpretation by a purpose "to produce a harmonious conclusion consistent with common sense and natural justice."

We find here exemplified the truth that "the letter killeth but the spirit giveth life." The quoted views of the worthy incumbent himself bear witness not only to his personal probity and just perceptions, but to the frequent disparity between the letter and spirit of the statutes, since he accepted and discharged its duties upon the assumption that while the letter justified the larger salary, he was reconciled to a basis within the spirit of the law and commensurate with the weight of its responsibilities. That which the letter would here destroy is the validity of the section itself, as well as the purpose, plan and consistency of the entire scheme. That to which its spirit would give life is the soundness and integrity of the legis-

lative purpose, and its consistency, uniformity and equality. There is therefore presented not a dilemma but a plain path.'

Reversed and judgment here for appellant.

## DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

Chapter 131, Laws 1926, which created our county courts, was repealed by the revision of that statute contained in chapter 17, Code 1930, and though the controlling opinion herein states that it was not repealed, the legislature, whose will should here control, said the contrary in section 3 of that Code, which provides that, "From and after the said first day of November, nineteen hundred and thirty, all acts and parts of acts, the subjects whereof are revised, consolidated and re-enacted in this Code, or repugnant to the provisions contained therein, shall be, and the same are hereby, repealed, subject, however, to any express exceptions or regulations relating thereto which may be contained in this Code." This is now section 14, Code of 1942, which section simply enacted a rule of the common law. Mobile & Ohio R. Co. v. Weiner, 49 Miss. 725; Myers v. Marshall County, 55 Miss. 344; Board of Supervisors of Clay County v. Chickasaw County, Supervisors, 64 Miss. 534, 1 So. 753; State Revenue Agent v. Hill, 70 Miss. 106, 11 So. 789; City of Vicksburg v. Sun Mutual Ins. Co., 72 Miss. 67, 16 So. 257; State v. Jenkins, 73 Miss. 523, 19 So. 206; Mississippi B. & L. Ass'n v. McElveen, 100 Miss. 16, 56 So. 187; Ascher & Baxter v. Edw. Moyse & Co., 101 Miss. 36, 57 So. 299; State v. Wyoming Mfg. Co., 138 Miss. 249, 103 So. 11; Rackley v. State, 166 Miss. 287, 146 So. 459; Hollandale Ice Co. v. Board of Supervisors, 171 Miss. 515, 157 So. 689; Russell v. State, 176 Miss. 853, 169 So. 654.

If section 693 of the Code, which superseded section 1 of chapter 131, Laws 1926, and section 706 of that Code,

which superseded the first nine lines of section 6 of chapter 131, Laws of 1926, are plain and unambiguous, as they manifestly are—and as the controlling opinion admits—they should be enforced as written. For, "No principle is more firmly established, or rests on more secure foundations, than the rule which declares when a law is plain and unambiguous, whether it be expressed in general or limited terms, that the legislature shall be intended to mean what they have plainly expressed, and, consequently, no room is left for construction." Koch & Dryfus v. Bridges, 45 Miss. 247, at page 259.

If further authority be needed for this elementary rule, see Yerger v. State, 91 Miss. 802, 45 So. 849; Hamner v. Yazoo Delta Lbr. Co., 100 Miss. 349, 56 So. 466; Eagle Lbr. & Supply Co. v. Robertson, 161 Miss. 17, 135 So. 499; McCary v. State, 187 Miss. 78, 192 So. 442; Wilson v. Y. & M. V. R. Co., 192 Miss. 424, 6 So. (2d) 313.

Section 693, Code 1930, provides, which chapter 131, L. 1926, did not, that "In and for each [of the counties] of the state wherein a county court is now in existence . . . there shall be an inferior court to be known as the county court." The county court of Quitman county was then in existence, and therefore continued to exist thereafter. The salary of the judges of the county courts, referred to in section 693, was fixed by section 697 of the Code at $3,600 per year. But according to the controlling opinion, these two plain and unambiguous sections do not express the legislative will as to the salary of the judges of county courts in counties of the class of Quitman county, but that the legislative will relative thereto is expressed in section 706 of the Code. That section is as follows: "In any county not brought within the provisions of this chapter by the terms of the first section thereof, and in which a county court has not been established," etc., a county court may thereafter be established by an election called by the board of supervisors; the salaries of the judges of the courts to be thereafter estab-

lished, to be graded according to the assessed valuation for taxation of property in the county.

Language could not be plainer or more unambiguous. But according to the controlling opinion, line 15 of section 706 should read as if the words "or have" appear between the words "may" and "come" thereof, thereby amending the statute and exercising a power which, under our Constitution, is vested solely in the legislature. Such an amendment of the statute by construction, according to the controlling opinion, is necessary, not because of any ambiguity therein, but because without the amendment there would be an inconsistency and injustice in the statute. Its inconsistency and injustice is said to appear from the fact that a majority of the court can see no good reason for making any difference in the salary of judges of courts then in existence, and of courts thereafter to be brought into existence, in counties of the same class. The legislature had the right to do just that, if it desired, with which the courts, except within narrow limits, not here present, have no right to interfere. It may be that the legislature did not thoroughly understand what it was doing when it enacted these sections of the Code, and that if it had it would have amended the statute as the controlling opinion has now done. But if that be true, as to which neither I nor my associates have any way of determining, that fact would not justify what the controlling opinion has here done. It is said that if the statute means what it says, and fixes the salary of judges of courts then in existence different from the salary of the judges of courts thereafter to be established, it would violate paragraph (o) of section 90 of the State's Constitution. I shall not pause to discuss this, except to point out that these Code sections are state-wide laws, dealing (1) with courts then in existence, and (2) with courts thereafter to be brought into existence, and to say how such a state-wide law can be declared to be local and private is beyond my comprehension. A casual examination of Millwood v. State, 190 Miss. 750, 756, 1 So.

(2d) 582, will disclose that it does not run counter to anything I have herein said.

The judgment of the court below should be affirmed.

I am requested by Judge ANDERSON to say that he concurs in this opinion.