CITY OF BELZONI *v.* STATE *ex rel.* RICE ATTORNEY GENERAL.

(Division B.  Oct. 30, 1939.)

[191 So. 657.  No. 33848.]

624

R. H. Nason, of Belzoni, for appellant.

**E. R. Holmes, Jr.**, Assistant Attorney-General, for appellee:

628

**McGowen, J.**, delivered the opinion of the court.

The State of Mississippi, on the relation of Greek L. Rice, Attorney-General, filed its bill in the Chancery Court against the City of Belzoni, Mississippi, a municipality thereof, seeking to recover excise or privilege tax on fuel oil alleged to be due the State. The city filed a special demurrer as to the items of tax sued for accruing prior to May 30, 1938, and also its answer as to items of excise tax accruing subsequent to that date.

On the bill, answer, agreed statement of facts, and special demurrer, the court entered a decree sustaining the special demurrer as to all items of account prior to May 30, 1938, on the ground that prior laws imposing the excise tax on municipalities had been repealed by Chapter 144 of the Laws of 1938, effective May 1st, of that year, as to the gallonage of fuel oil received by the municipality on and after May 30, 1938. The chancellor decreed that the municipality was liable for that tax with 100% penalty in the total sum of $202.28; and further ordered that the temporary injunction theretofore granted be continued in full force against the municipality for one year from the date of the decree. From this decree the attorney general prosecutes an appeal to this Court, and the City of Belzoni filed its cross-appeal.

The City of Belzoni abandons its cross-appeal in its brief therefor on cross-appeal. The case will be affirmed.

The bill charged in part as follows: "On May 1, 1936, defendant had on hand in the State of Mississippi, in

storage 3630 gallons of fuel oil as shown by Exhibit '1' hereto attached, which Exhibit is made a part hereof by reference the same as if fully set out in words and figures; during the period from May 1, 1936 through October 27, 1936 the defendant purchased from a person, firm or corporation who was not a qualified Mississippi distributor or wholesaler of gasoline, 95,102 gallons of fuel oil as shown by Exhibit '2' hereto attached, which Exhibit is made a part hereof by preference the same as if fully set out in words and figures; during the period from December 10, 1936 through August 1, 1938 defendant purchased from persons, firms or corporations not qualified as Mississippi distributors or wholesalers of gasoline, 259,630 gallons of fuel oil as shown by Exhibit No. '3' hereto attached, which Exhibit is made a part hereof by reference the same as if fully set out in words and figures. All of the fuel oil above mentioned and shown in Exhibits '1', '2' and '3' inclusive, comes within the definition of 'oil' as defined in Chapter 162 of the Laws of Mississippi of 1936, as amended by Chapter 21 of the Laws of Mississippi of the Second Extraordinary Session of 1936, and Chapter 134 [144] of the Laws of Mississippi of 1938. Defendant brought said fuel oil from outside the state into the State of Mississippi, and said fuel oil was received by defendant in the State of Mississippi for storage and use in internal combustion engines. All of said fuel oil was stored in the State of Mississippi by defendant, and was used by defendant in Mississippi in internal combustion engines, to-wit: as a fuel in the internal combustion engines operated by defendant in manufacturing power and making electricity in the operation of its municipality owned electric light plant. No part of the excise tax or penalty imposed by Chapter 162 of the Laws of Mississippi, 1936 has ever been paid on the 3650 gallons of fuel oil shown on Exhibit '1', the 95,102 gallons of fuel oil shown on Exhibit '2', and no part of the excise tax or penalty imposed by Chapter 21 of the Laws of Mississippi, Second

Extraordinary Session of 1936, and Chapter 144, Laws of 1938, has ever been paid on the 259,630 gallons of fuel oil shown on Exhibit '3'."

The bill further alleged that under the existing and applicable statutes the municipality of Belzoni was a distributor or wholesale dealer in fuel oils as defined in the statute and was liable for a penalty of 100% for not having paid the tax.

All the pleadings and agreement admit that the City of Belzoni bought the quantities of fuel oil alleged in the declaration from out of the state, and that no tax had been paid thereon. The fuel oil was kept and used by the municipality for the purpose of operating its utilities. The only question presented for decision in this case is, would Chapter 144 repeal prior laws imposing an excise tax on municipalities as distributors of fuel oil which had been bought from without the state and which had not paid the distributors excise tax imposed on the gallonage of fuel oil kept, stored, and used by municipalities.

In the laws of 1936, Chapter 162, containing forty-six sections, is a comprehensive act creating the office of Motor Vehicle Commissioner, prescribing his duties, and imposing an excise tax on gasoline and certain fuel oils not classed as gasoline.

By Section 5 of said Chapter 162, the fuel oil here involved was taxable and by it the municipality of Belzoni was a distributor within the meaning of the act.

Section 8 of said Chapter 162 imposed the tax on gasoline and oil, Section (a) thereof imposed six cents per gallon on gasoline, and Section (b) being in the following language:

"One cent (1¢) per gallon on all oils as defined in this act stored, sold or distributed, or received in this state for sale, storage, distribution or use. Provided, that if any distributor or other person shall sell any oil, knowing, or having good reason to know, that the same is to be used, or compounded, mixed or blended, for motor vehicle purposes, said distributor, or other person selling

the same, shall be liable for six cents (6¢) per gallon tax on said oil.

"Provided that the tax herein imposed and assessed shall be collected by and paid to the state of Mississippi but once in respect to any gasoline or oil."

Another section of that act imposed a penalty, and still another provided for an injunction. Many preceding acts were simultaneously repealed, and there the effort of the legislature was to assemble, with amendments, the pre-existing statutes in one comprehensive act. Section 44, however, specifically continued in full force and effect all prior laws for the purpose of the collection of the tax and the penalty.

In the second extraordinary session of the legislature in 1936, Chapter 21 became effective on December 1st, 1936. This Chapter 21 purported only to amend Section 8 of Chapter 162 of the Laws of 1936, and the amendment was for the main purpose of imposing excise tax on municipalities as distributors reducing the former tax to one quarter cent per gallon, and Section 2 of said Chapter 21 provided that the act should be prospective, but further provided that Chapter 162, Laws of 1936, should remain in force as to all taxes accrued prior to the passage of the act.

Chapter 144 of the Laws of 1938, which became effective May 1, 1938, purported to amend Chapter 162, Laws of 1936, amending the latter chapter by sections in the new act providing new sections. This law is in effect a compilation of all the pre-existing statutes, the general effect of which was to make more difficult the evasion of the excise tax imposed upon gasoline and fuel oil.

By Section 6 of Chapter 144, Laws of 1938, Section 8 of Chapter 162 of the Laws of 1936 was amended so as to impose a tax on "any person engaged in business as a distributor, or who acts as a distributor, . . . shall pay for the privilege of engaging in such business, or acting as such distributor," an excise tax on gasoline in

the precise language of Section 8 of Chapter 162, Chapter 21 having enacted that imposition of tax in the same language. Chapter 144 further amended the said Section 8 by reducing the tax on the oils, as defined in the act, stored, sold, or distributed at one-half cent per gallon and in the precise language of Chapter 21 which imposed the tax of one-fourth of one cent on municipalities becoming distributors within the meaning of the act of fuel oils. In this said Chapter 144 by Section 27, Chapter 21 of the Second Extraordinary Session, 1936, was expressly repealed. However, the legislature did not specifically re-enact the savings as to liability for prior excise taxes on gasoline and oils as found in Section 44, Chapter 162, Laws of 1936.

The general conclusion as to the effect of Chapter 144 is that it amended twenty-four sections of Chapter 162 and left in full force the other twenty-two sections of the act. Insofar as Section 6, Chapter 144, Laws of 1938, is concerned, it was a bringing forward of Section 8 of Chapter 162, Laws of 1936, insofar as the imposition of the tax was concerned with an amendment reducing the tax per gallon on fuel oils as to all found to be distributors, at one-half cent per gallon, by the Laws of 1936 it was one cent per gallon, and as to municipalities. In practically the same language Chapter 21 Second Extraordinary Session 1936, was re-enacted and the reduction from one cent to one-half cent per gallon imposed by Section 8, Chapter 162, Laws of 1936. A reduction of the percentage of gallonage tax was effected as to municipalities and continued as set forth in said Chapter 21. The municipality here contends that said Section 6 amending Section 8, Chapter 162, Laws of 1936, together with Section 27, expressly repealed those chapters and thereby effected a repeal of all pre-existing excise tax on fuel oil insofar as municipalities are concerned, and relies upon Crow v. Cartledge, 99 Miss. 281, 54 So. 947, Ann. Cas. 1913E, 470; Bradstreet Co. v. City of Jackson, 81 Miss. 233, 32 So. 999; H. Musgrove, Auditor, etc. v.

Vicksburg & Nashville R. Co., 50 Miss. 677, and French v. State, 53 Miss. 651.

Crow v. Cartledge, supra, is perhaps the strongest case for appellee's contention. In that case there was an effort to collect the privilege taxes from Crow for the privilege of conducting a railroad eating house under a statute which provided a privilege tax on each railroad eating house where two or more passenger trains, running on what is known as through trunk lines, stop daily for meals. The suit was instituted on the 22nd day of April, 1909, judgment entered December, 1909, while the above privilege tax statute was in force. By the Laws of 1910 that section was brought forward into Chapter 94, Laws of 1910, and amended by the following being added thereto: "But this shall apply only to hotels . . . from which the railroad receives a rental, or part of the profits arising from the keeping of such hotels." There was no saving clause in the amending statute. The court held that the effect of a repealing statute of this character was to abrogate the former statute as completely as if it had never been passed except only as to suits which had been commenced and concluded while the law thus repealed was in force. By the repeal the right to collect the unpaid tax was taken away whether a suit was pending therefor or not. The cause of action was taken away and the suit must end. It will be observed at once in the Crow case that originally the privilege tax statute imposed a tax on the business of an individual located at the junction of a railroad without regard to the ownership or interest of the railroad company operating there, but the amendment relieved all individuals operating railroad eating houses except as to railroad eating houses in which the railroad was interested as outlined in the amending statute. Thus the class of taxpayers was materially changed in that case. In the case at bar the tax is in the same language and upon the same classes, the only change being, insofar as it effects the municipality here involved, to reduce the

percentage per gallon to be paid by municipalities, as distributors.

We think the case here falls squarely within the exception to the rule as stated in the Crow case as announced in the case of State Tax Commission v. Miss. Power Co., 172 Miss. 659, 160 So. 907, 909, wherein the court said: "Where the provisions of a statute are carried forward and embodied in a codification or revision, in the same words, or which are substantially the same and not different in meaning, the latter provisions will be considered as a continuance of the old law and not as a new or original enactment, and this is true both where there is an express declaration to that effect in the codification or revision, and also in the absence of such declaration. This rule applies although the statute brought forward has been simultaneously repealed by the codification or revision. The effect of the continuance of the old law is that all rights and interests thereunder are preserved. 59 C. J. 897, section 495; Anding v. Levy, 57 Miss. 51, 34 Am. Rep. 435; State v. Hill, 70 Miss. 106, 11 So. 789; Abbay v. Board of Levee Commissioners, 83 Miss. 102, 35 So. 426; McDonald v. State Tax Commsision, 158 Miss. 331, 130 So. 473."

In the latter case the Court held that the general scheme of inheritance taxation imposed in Chapter 134, Laws of 1924, was preserved and brought forward in each of the amendatory acts; that tax on inheritances were not repealed or released by the subsequent statute, which only amounted to an amendment and revision of the prior statute. The authorities cited, supra, by the Court fully sustain the pronouncement. In the case at bar, Chapter 144 insofar as municipalities were taxed was substantially the same in imposing the tax then, it being a reduction of the percentage per gallon, which we think is substantially the same language, insofar as the tax imposed is concerned, as was used in Chapter 21, Laws 1936, Ex. Sess., and Chapter 162, Laws 1936, which Chapter 144 purported to codify and revise and bring forward

in the manner in which we have set forth herein. The effect of it was to amend Chapter 162 so as to continue the tax in force for the time and in the manner and to the amount imposed by the pre-existing statute which was brought forward in substantially the same language as originally imposed.

We are therefore of the opinion that the court below erred in sustaining the special demurrer as to the privilege or excise tax accruing prior to the effective date of the Laws of 1938, Chapter 144. The decree should have been for the full amount sued for with interest thereon from the date of the suit. The bill herein was filed in October, 1938.

The injunction awarded by the lower court will be continued in force for the period provided in the decree below.

Reversed and decree here for the appellant.