410 So.2d 1312 (1982)
John DOE and a Female Infant
v.
ATTORNEY W.
No. 52904.
Supreme Court of Mississippi.
March 10, 1982.
*1313 Bob Owens, Denise Sweet, Jackson, for appellants.
William R. Wright, Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and DAN M. LEE, JJ.
BROOM, Justice, for the Court:
Termination of parental rights of the appellant, John Doe,[1] father of a child born out of wedlock, is the chief aspect of this case appealed from the Chancery Court of the First Judicial District of Hinds County, Mississippi. The natural mother consented to an adoption of the child (an infant), but the natural father, appellant Doe, would not agree to the adoption whereupon the appellee, Attorney W., filed a petition to terminate Doe's right to the infant girl child. Doe answered and by cross-bill sought custody of the child. This (Doe's) appeal is from the final decree terminating his parental rights. Doe argues that (1) the lower court was manifestly in error in terminating Doe's parental rights absent presentation of a preponderance of evidence establishing one or more of the grounds for termination of such rights pursuant to Mississippi Code Annotated § 93-15-103 (Supp. 1980); (2) the court erred in finding that Doe had abandoned the unborn child; and (3) the court manifestly erred in finding that Doe was morally unfit. We affirm.
The facts are substantially as follows. By instrument dated June 12, 1980, the child's natural mother consented to adoption of the child, and she relinquished exclusive custody, care, and control of the child to appellee Attorney W., an attorney in Hinds County, Mississippi representing the couple who seek to adopt the infant. The natural mother met the appellant/natural father Doe in May or June of 1979, when both of them were employed at a restaurant in another state. Doe, a married adult man, was separated from his wife, and in June he and the subject infant girl's natural mother became sexually intimate and began their affair. Their next sexual encounter was in August 1979, and in October the mother advised appellant Doe that she was pregnant. The child was born June 9, 1980. Other facts will be stated where appropriate in this opinion.
*1314 The first question presented is whether the case is controlled by Mississippi Code Annotated § 93-15-1, et seq. (1972) or Mississippi Code Annotated § 93-15-101, et seq. (Supp. 1981).[2] We hold that the former statute controls in this case. This suit was filed June 30, 1980, and the latter statute did not become effective until the following day, July 1, 1980. It is obvious from the beginning to the end of the trial as reflected by the record that the court and the parties were trying the lawsuit under the earlier statute rather than the latter statute. With leave of the court, appellee Attorney W. filed his petition to terminate Doe's parental rights to the child, and in the first paragraph the attorney averred that the proceeding "is brought pursuant to Miss. Code Ann. § 93-15-1, et seq. (1972)."
Doe's answer admitted the averments of paragraph number 1 of the petition, and nowhere in the pleadings or in the record was there any mention made of the latter statute which became effective after the suit was filed. In his brief, appellant Doe contends that the new or latter statute was controlling but we note that such issue was never raised in the lower court. Appellee, Attorney W., in his petition (paragraph 3) stated that "pursuant to Miss. Code Ann. § 93-15-5, the infant has been made a party... ." In paragraph 3 of his answer, appellant Doe admitted this averment. Further in his petition at paragraph 6 the appellee charged that defendant Doe was "unfit to rear and train the child within the meaning of Mississippi Code Annotated § 93-15-1 (1972)," and although Doe denied the averments of this paragraph, he did not charge that another statute was controlling. We have searched the record and find nowhere in it anything indicating that appellant Doe objected to trial under the provisions of the earlier statute. Nothing in the record even hints that the parties were proceeding under the new statute which, as stated above, did not become effective until a date subsequent to the filing of this proceeding. Furthermore, the significant events which transpired and culminated in the action before us occurred before the new statute (§ 93-15-101, et seq.) became effective.
Doe asserts that the lower court erred in deciding the case under a statute that had been repealed, Mississippi Code Annotated § 93-15-1 (1972), rather than under the new code section which became effective July 1, 1980, Mississippi Code Annotated § 93-15-103(3) (Supp. 1981). According to Doe, the newer statute repealed the former requiring that the suit proceed pursuant to § 93-15-103 (Supp. 1981). Reliance is based upon several cases, one of which is Belew v. Jones, 56 Miss. 342 (1879). That case was a suit for partition of land involving the question of unity of title and is not controlling on the issue presently before us. Travelers Indemnity Co. v. Munro Oil and Paint Co., 364 So.2d 667 (Miss. 1978), which involved the surety bond of a public contractor who failed to make publication as required by Mississippi Code Annotated § 31-5-13 (1972), is also cited by Doe. There the statute had been in force and effect for many years and required publication which, of course, in such a matter is a jurisdictional issue and cannot be waived. Such is not the case here and this suit does not present a question of whether the lower court had jurisdiction of the issue. The cases cited above, including Musgrove v. Vicksburg & Nashville R.R., 50 Miss. 677 (1874) which some of the cases discuss, and the other cases relied upon by Doe are so dissimilar to the present case as to be not controlling.
French v. State ex rel Felding, 53 Miss. 651 (1876) has similarities but is quite distinguishable. Significantly, in the present case the new statute contains language similar to that of the prior statute  the new statute effectively recodified and redefined "grounds for termination of parental rights" and although the stated grounds *1315 had certain changes in them, they still embody to a large extent the concept contained in the original § 93-15-1 (1972). Also of significance here is the fact that there was no time gap or hiatus between the lapsing of the prior statute and the effective date of the latter statute.
In the instant case, when the case in chief was rested, Doe moved to dismiss on the ground "they have not put forth a prima facie case of unfitness." No mention was made of any statutory change in the grounds for termination. Nowhere in the pleadings did he demur to the petition against him, although he moved for a bill of particulars which was furnished. At the beginning of the trial, which was stated to be under § 93-15-1, supra, Doe's counsel specifically stated "we have no objection" after the attorney for the other side stated into the record that the suit was based on abandonment and on the father being "morally" and "otherwise unfit" as a parent. Upon the peculiar posture and facts of this case, we think the better reasoning is to apply the rationale of City of Belzoni v. State ex rel. Rice, 186 Miss. 623, 191 So. 657 (1939) and State Tax Commission v. Mississippi Power Co., 172 Miss. 659, 160 So. 907 (1935). Here, in effect, the new statute carried forward the concept of the prior statute and amounted to a revision of the statutes on termination of parental rights. Accordingly, trial under the law and facts as they existed when the suit was filed is not reversible error.
Not only was the evidence sufficient to support the chancellor's decree finding the father unfit to have custody of the child, such evidence also was sufficient to support the decree under the legislation which became effective July 1, 1980, that is, Mississippi Code Annotated § 93-15-103(3). Under the latter statute, in subsection (d) of section (3) termination of the parental rights may be ordered when
(d) The parent exhibits ongoing behavior which would make it impossible to return the child to the parent's care and custody.
The facts of this case cannot help but establish ongoing behavior of Doe rendering it impossible to allow him to take "care and custody" of the baby. This is true because the evidence establishes that he cannot legitimize the baby's status. It establishes a course of conduct on his part making it almost unthinkable that any court could in good conscience turn over custody of the baby to one who, like Doe here, disavowed his marital vows, lived awhile with a teen-aged girl, impregnated her, and then deserted her when she (and the baby) needed him most. Had they relied upon him for sustenance, they both would have perished. Thus, even if the case were governed (though it isn't) by the new statute, the decree appealed from is sufficiently supported by the evidence and affirmance is required.
Our recently decided case of Reyer v. Harrison County Department of Public Welfare, 404 So.2d 1023 (Miss. 1981) involved termination of parental rights of legitimately married natural parents and was tried under the former statute, § 93-15-1, supra. In an opinion written by Justice Sugg in Reyer, we reversed the lower court's decree because of inadequacies of the proof. The question as to which statute would apply was not squarely before us and was not addressed in Reyer. Similarly, another recent case, Millien v. State, 408 So.2d 71 (Miss. 1981), involved termination of parental rights but the present issue was not decided. As previously held, our view is that when a statute is repealed by a new statute which substantially reenacts provisions of the prior statute (which is true in the present case) simultaneously with the repeal, the operation of the original statute is not interrupted by the repeal as to an action which was filed and pending before the effective date of the new legislation. City of Belzoni v. State ex rel. Rice, supra; State Tax Commission v. Mississippi Power Co., supra. Therefore, we reject the assertion made by Doe in his brief that the 1980 legislation  § 93-15-101, et seq. (Supp. 1981)  is controlling.
*1316 Next the biological father Doe contends that the lower court was "manifestly wrong in finding that ... [Doe] had abandoned the unborn child... ." Both litigants agree upon the proposition that the law in this state is that abandonment of a child is such conduct as evinces a settled purpose of a parent to forego all parental duties, and to relinquish all parental claims to the child. They both cite Mayfield v. Braund, 217 Miss. 514, 64 So.2d 713 (1953). We reversed in Reyer v. Harrison County Department of Public Welfare, supra, because "the proof does not rise to the level that would justify terminating the parental rights under § 93-15-1." In the present case, we think the evidence was sufficient. The evidence here establishes that in November, 1979, Doe and the natural mother began to occupy the same apartment and he paid the bills, car payments, and furnished money for her clothing. At first, appellant Doe seemed to be pleased about the prospects of their having a baby and he asked her to marry him and raise the baby. However, along about the latter part of December, he began to stay out late at night and would frequently return drunk. When the natural mother discussed marriage with him, he refused and on one occasion expressed a desire that she have her pregnancy aborted. Subsequently, it was his suggestion that she place the child for adoption and about the latter part of February he advised her that he was not ready for the responsibility of her and the baby and he asked her to leave the apartment. She was interested in marriage and was not at first willing to have the baby aborted or adopted, but in the month of March she moved into a trailer and during the next two weeks, he and she discussed adoption procedures. He expressed to her his feeling that adoption was a good idea, and that she could decide for herself and do what was best for her and the baby.
Seeking financial aid for medical expenses related to her pregnancy, the natural mother visited the County Welfare Office and then advised Doe that she was required to give the name of the father of the child. He objected to this because it might require him to contribute money to the Welfare Department in support of her and the baby. She then moved to Mississippi to have the baby and arrange for the adoption. Appellant Doe advised her he would help with expenses, but he only gave her twenty dollars and by his own admission made no financial contributions toward her prenatal care. On May 15, 1980, Doe was called by the appellee Attorney W. of the bar of Mississippi, and informed that arrangements were being made for the adoption of the baby in Mississippi. Doe was told by the attorney that consent papers would be forwarded to him authorizing the adoption and surrendering Doe's parental rights, which was agreed to by Doe. After the infant, a girl, was born on June 9, 1980, Attorney W. again telephoned Doe and advised him of the birth and requested that Doe sign the adoption papers which had been forwarded to Doe. For the first time, during that telephone conversation, Doe expressed his desire to have custody of the baby. The natural mother on June 12, 1980, turned custody of the baby over to the appellee, Attorney W., and executed consent documents to Attorney W., who put the baby into the hands of the couple who desired to adopt the child. Attorney W. petitioned the chancery court on June 30, 1980, to terminate Doe's parental rights to the child averring that Doe had totally abandoned and deserted the child and was mentally, morally, and otherwise unfit to rear and train her. On July 3, 1980, a guardian ad litem was appointed for the child. Responding to the petition of Attorney W., appellant Doe filed an answer together with a cross-bill by which he sought custody of the minor child.
The evidence as summarized above (and accepted by the lower court) establishes that:
(1) Doe, after the natural mother's pregnancy was known to him, suggested to her that she have an abortion;
(2) he refused to contribute to the expense of her prenatal care;
(3) he demanded that she not use his name in applying for welfare assistance;

*1317 (4) his relationship with her ceased because he did not want the responsibility for both her and the child;
(5) he told her that the decision regarding the child's destiny was hers alone and that she could do whatever she wanted with the child; and
(6) a month prior to the baby's birth, he advised appellee that he would surrender the child for adoption and had no objection to the baby's being offered for adoption.
Doe allowed the natural mother to bear all the physical, mental and financial burdens of pregnancy and childbirth without at any time assisting her financially. At this time, according to the record, he has not offered her any aid for the child. Upon such a record, we cannot hold that the lower court erred in finding that Doe's parental rights to the child were terminated in part on the ground of abandonment of the child.
Another argument asserted on Doe's appeal is that the lower court manifestly erred in finding that Doe was "morally unfit." We find no merit to this contention and point out that in a number of cases we have held that a parent who is guilty of infidelity is not entitled to child custody. Anderson v. Watkins, 208 So.2d 573 (Miss. 1968). In the instant case, the evidence is clear that Doe (a married man) was obviously living in an open, adulterous relationship with the natural mother, a teen-aged girl. We have also held that in divorce cases wherein the woman is shown to be guilty of adultery, she is not entitled to child custody. Winfield v. Winfield, 203 Miss. 391, 35 So.2d 443 (1948). Cases relied upon by the appellant in support of his argument that his living in open adultery with the natural mother did not render him morally unfit as a parent are not controlling because of factual differences. Adultery is but one of the factors to be considered when determining custody of a child.
It is unavailing that Doe's mother and sister are willing to take care of the child if he were not able to do so. His sister testified that she was willing to adopt the child and she testified
I don't want this baby so badly that I would take it away from my brother. If the Court saw that my brother could not have the baby, then I would want it. You know, then that would be my ultimate goal.
Even though Doe's relatives in another state might be willing to assume custody of the baby, a primary issue is Doe's fitness, and the finding that he was in fact morally unfit as a parent was supported by the testimony. Clear and convincing is the testimony of his moral unfitness. The record shows that appellant Doe was a married man living in open adultery with a teen-aged girl who gave birth to the baby whose custody and destiny are at stake here. Having fathered her child, and having the status of a married man, he is not in a position to legitimize the baby as adopting parents may do. Our holding is that the chancellor's finding of the moral unfitness of Doe was entirely appropriate upon the evidence presented. For us to hold otherwise would be the equivalent of our sanctioning parental rights in a married man who has a brief sexual relationship with an unmarried woman for no other purpose than lustful pleasure, and for neither love nor the establishment of an appropriate and loving family relationship.
We find no reversible error in the appeal presented to us.
AFFIRMED.
SMITH and SUGG, P. JJ.; and WALKER, ROY NOBLE LEE, BOWLING, HAWKINS and DAN M. LEE, JJ., concur.
PATTERSON, C.J., specially concurs.
PATTERSON, Chief Justice, specially concurring:
I concur in the result reached by the court in this case. I do so because of the factual circumstances.
NOTES
[1] Pursuant to Mississippi Code Annotated §§ 93-17-25, 93-17-29, and 93-17-31 (1972), the names of all litigants in an adoption proceeding are kept confidential. Therefore, they are identified either by fictitious names or initials. This cause is not an adoption per se but has aspects of such a case.
[2] Although not in issue, it is conceded by Attorney W. in his brief that unwed fathers have certain "constitutionally protected" relationships to children including due process requirements as to notice, etc. Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).